No. 10-56014

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STEVE HARRIS, DENNIS RAMOS, DONALD HANKS, JORGE TORRES, and
ALBERT CAPPA, On Behalf of Themselves and All Others Similarly Situated,
*Plaintiffs – Appellants,*

v.

AMGEN, INC., AMGEN MANUFACTURING, LIMITED, FRANK J. BIONDI,
JR., JERRY D. CHOATE, FRANK C. HERRINGER, GILBERT S. OMENN,
DAVID BALTIMORE, JUDITH C. PELHAM, KEVIN W. SHARER,
FREDERICK W. GLUCK, LEONARD D. SCHAEFFER, JACQUELINE
ALLRED, RAUL CERMENO, JACKIE CROUSE, LORI JOHNSTON,
MICHAEL KELLY, CHARLES BELL, AMGEN PLAN FIDUCIARY
COMMITTEE, FIDUCIARY COMMITTEE OF THE AMGEN
MANUFACTURING LIMITED PLAN and JOHN DOES 1-50,
*Defendants – Appellees*

On Appeal from the United States District Court
for the Central District of California
No. CV 07-05442-PSG
The Honorable Philip S. Gutierrez

## BRIEF OF APPELLANTS

Mark C. Rifkin, Esq.
Michael Jaffe, Esq.
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Thomas J. Mckenna, Esq.
GAINEY & McKENNA
295 Madison Avenue
New York, NY 10017
Telephone : (212) 983-1300
Facsimile: (212) 983-0383

Francis M. Gregorek, Esq.
Betsy C. Manifold, Esq.
Rachele R. Rickert, Esq.
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone : (619) 239-4599
Facsimile: (619) 234-4599

*Attorneys for Appellants Steve Harris, et al., On Behalf of Themselves and All
Others Similarly Situated*

# TABLE OF CONTENTS

I.    STATEMENT OF JURISDICTION .................................................. 1

II.   ISSUES PRESENTED FOR REVIEW............................................. 2

III.  STATEMENT OF THE CASE ...................................................... 3

    A.    Nature Of The Case................................................................. 3

    B.    Prior District Court And Appellate Proceedings...................... 5

IV.   STATEMENT OF FACTS............................................................. 7

    A.    The Plans ................................................................................ 7

    B.    The Plaintiffs .......................................................................... 8

    C.    The Defendants ...................................................................... 8

        1.    Amgen.......................................................................... 8

        2.    AML ........................................................................... 10

        3.    The Director Defendants............................................. 10

        4.    The Fiduciary Committee Defendants......................... 11

    D.    Defendants' Breaches of Their Fiduciary Duties Under ERISA .......... 12

V.    SUMMARY OF ARGUMENT...................................................... 16

VI.   STANDARD OF REVIEW........................................................... 18

VII.  ARGUMENT.............................................................................. 20

    A.    The District Court Erred In Finding That The FAC Did Not Plausibly Allege A Cause Of Action For Breach Of The Duty Of Care Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) .............................. 20

        1.    The District Court's Analysis Of The FAC Was Flawed........... 20

        2.    A Presumption Of Prudence Has No Place In The  Court's *De Novo* Analysis Of The FAC, Notwithstanding The Court's Recent Decision In *Computer Science* ........................................ 24

        3.    The Allegations Of The FAC Clearly Support A Claim For Imprudence Under The Applicable "Prudent Man" Standard............................................. 30

        4.    Even if the Presumption Of Prudence Applies To This Case, Its Application At The Pleading Stage Is Improper........................................................ 36

5. Allegations Of "Impending Collapse" Should Not Be Required Where The Fiduciaries Are Free To Eliminate Company Stock ...................................... 38

B. The District Court Erred In Finding That The FAC Did  Not Plausibly Allege A Cause of Action For Failure To  Provide Complete And Accurate Information To The Plans' Participants Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ........................................... 39

C. The District Court Erred In Dismissing Plaintiffs' Other ERISA Claims ................................................................................................. 44

D. The Complaint Adequately Alleges the Fiduciary Status Of All Defendants, Including Amgen ............................................................. 48

E. The District Court Erred in Dismissing Plaintiffs' Claim Brought Under ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) .............................. 51

VIII. CONCLUSION ............................................................................................. 54

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Acosta v. Pacific Enter.*,
 950 F.2d 611 (9th Cir. 1991) ...............................................................40

*Alvidres v. Countrywide Financial Corp.*,
 2008 WL 1700312 (C.D. Cal. April 9, 2008)................................45, 48

*Alvidres v. Countrywide Financial Corp.*,
 No. CV 07-05810-RGK (CTx),
 2008 WL 819330 (C.D. Cal. Mar. 18, 2008)................................37, 47

*American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life
 Assurance Soc. Of the U.S.,*
 841 F.2d 658 (5th Cir. 1988) ...............................................................50

*Ariz. State Carpenters Pension Trust Fund v. Citibank*,
 125 F.3d 715 (9th Cir. 1997) ...............................................................48

*Ashcroft v. Iqbal*,
 -- U.S. --, 129 S. Ct. 1937 (2009) ........................................................19

*Banks v. Healthways, Inc.*,
 No. 3:08-0734,
 2009 WL 211137 (M.D. Tenn. Jan. 28, 2009).....................................48

*Barker v. American Mobil Power Corp.*,
 64 F.3d 1397 (9th Cir. 1995) .........................................................40, 41

*Basic, Inc. v. Levinson*,
 485 U.S. 224 (1988)...............................................................................40

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...............................................................................19

*Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey
 Welfare Fund v. Wettlin Assocs., Inc.*,
 237 F.3d 270 (3d Cir. 2001)..................................................................51

*Braden v. Wal-Mart Stores, Inc.,*
 588 F.3d 585 (8th Cir. 2009) ....................................... 20, 36, 41, 46, 53

*Brieger v. Tellabs, Inc.*,
 245 F.R.D. 345 (N.D. Ill. 2007).............................................................44

*Brieger v. Tellabs, Inc*.,
 629 F. Supp. 2d 848 (N.D. Ill. 2009).....................................................23

*Cannon v. MBNA Corp.*,
No. 05-429 GMS,
2007 U.S. Dist. LEXIS 48901 (D. Del. July 6, 2007) .........................................51

*Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 559 (1985)..............................................................................................24

*Dann v. Lincoln Nat. Corp.*,
708 F. Supp. 2d 481 (E.D. Pa. 2010)....................................................................46

*Difelice v. U.S. Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) ................................................................................29

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982)..................................................................................46

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ..............................................................................29

*Donovan v. Mazzola*,
716 F.2d 1226 (9th Cir. 1983) ..............................................................................31

*Edgar v. Avaya*,
503 F.3d 340 (3d Cir. 2007)....................................................................25, 38, 40

*Esden v. Bank of Boston*,
229 F.3d 154 (2d Cir. 2000)..................................................................................24

*Estate of Becker v. Eastman Kodak Co.*,
120 F.3d 5 (2d Cir. 1997)......................................................................................41

*Farr v. U.S. West Comms., Inc.*,
151 F.3d 908 (9th Cir. 1998) ................................................................................40

*Glaziers & Glassworkers Union v. Newbridge Secs., Inc.*,
93 F.3d 1171 (3d Cir. 1996)..................................................................................41

*Harris v. Amgen, Inc.*,
573 F.3d 728 (9th Cir. 2009) ..................................................................................5

*Herman v. S. Carolina Nat'l. Bank*,
140 F.3d 1413 (11th Cir. 1998) ............................................................................52

*Hill v. BellSouth Corp.*,
313 F. Supp. 2d 1361 (N.D. Ga. 2004)..................................................................36

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996) ..............................................................................53

iv

*In re ADC Telecommunications, Inc., ERISA Litig.*,
  Master File No. 03-2989 ADM/FLN,
  2004 U.S. Dist. LEXIS 14383 (D. Minn. July 26, 2004) ....................................36

*In re Calpine Corp. ERISA Litig.*,
  2005 U.S. Dist. LEXIS 9719 (N.D. Cal. March 31, 2005)...................................44

*In re Citigroup ERISA Litigation*,
  cv-09-2804 (2d Cir. Dec. 28, 2009).......................................................................25

*In re Computer Sciences Corp. ERISA Litig.*,
  635 F. Supp. 2d 1128 (C.D. Cal. 2009) ...................................... 21, 22, 23, 32, 34

*In re Electronic Data Sys. Corp. "ERISA" Litig.*,
  305 F. Supp. 2d 658 (E.D. Tex. 2004)..........................................................37, 45

*In re Enron Corp. Sec. & Derivative & ERISA Litig.*,
  284 F Supp. 2d 511 (S.D. Tex. 2003)......................................................23, 47, 48

*In re First Am. ERISA Litig.*,
  258 F.R.D. 610 (C.D. Cal. 2009)..........................................................................43

*In re First American Corp. ERISA Litig.*,
  No. SACV 07-01357-JVS (RNBx),
  2008 U.S. Dist. LEXIS 83832 (C.D. Cal. July 14, 2008)........................32, 37, 42

*In re Ford Motor Co. ERISA Litig.,*
  590 F. Supp. 2d 883 (E.D. Mich. 2008)................................................................38

*In re Fremont Gen. Corp. Litig,*
  564 F. Supp. 2d 1156 (C.D. Cal. 2008) ..........................................................33, 37

*In re General Motors ERISA Litig.*,
  No. 05-71085, 2006 U.S. Dist. LEXIS 16782 (E.D. Mich. Apr. 6, 2006) ...........43

*In re Honeywell Int'l. ERISA Litig.*,
  No. 03-1214,
  2004 U.S. Dist. LEXIS 21585 (D. N.J. September 14, 2004) ........................35, 36

*In re IKON Office Solutions, Inc. Sec. Litig.*,
  191 F.R.D. 457 (E.D. Pa. 2000)............................................................................44

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
  86 F. Supp. 2d 481 (E.D. Pa. 2000) .....................................................................37

*In re JDS Uniphase Corp. Erisa Litig.*,
  No. C 03-04743 CW (WWS),
  2005 WL 1662131 (N.D. Cal. July 14, 2005)................................................43, 50

*In re Marsh ERISA Litig.*,
   No. 04 Civ. 8157(SWK), 2006 WL 3706169 (S.D.N.Y. Dec. 14, 2006)............44

*In re Merck & Co. Sec. Deriv. & ERISA Litig.*,
   MDL No. 1658,
   2009 U.S. Dist. LEXIS 22923 (D.N.J. Mar. 23, 2009)........................................34

*In re Morgan Stanley ERISA Litig.*,
   696 F. Supp. 2d 345 (S.D.N.Y. 2009) ............................................................35, 46

*In re Pfizer Inc. ERISA Litig.*,
   No. 04-Civ-10071 (LTS) (JFE),
   2009 WL 749545 (S.D.N.Y. Mar. 20, 2009)...........................................37, 46, 50

*In re Polaroid ERISA Litig.*,
   362 F. Supp. 2d 461 (S.D.N.Y. 2005) ..................................................................37

*In re Regions Morgan Keegan ERISA Litig.*,
   692 F. Supp. 2d 944 (W.D. Tenn. 2010) ........................................................34, 37

*In re Sprint Corp. ERISA Litig.*,
   388 F. Supp. 2d 1207 (D. Kan. 2004)............................................................35, 45

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ..................................................................... *passim*

*In re The Goodyear Tire & Rubber Co. ERISA Litig.*,
   438 F. Supp. 2d 783 (N.D. Ohio 2006)..........................................................35, 37

*In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*,
   Lead Case No. C07-1874 MJP,
   2009 WL 3246994 (W.D. Wash. Oct. 5, 2009)..............................................40, 42

*In re WorldCom, Inc.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003) ...........................................................22, 23

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   312 F. Supp. 2d 1165 (D. Minn. 2004)................................................................43

*In re Xerox Corp. ERISA Litigation*,
   483 F. Supp. 2d 206 (D. Conn. 2007)...........................................................23, 50

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) .............................................................................30

*Jones v. NovaStar Fin., Inc.*,
   257 F.R.D. 181 (W.D. Mo. 2009).........................................................................43

*Jordan v. Michigan Conference,*
  207 F.3d 854 (6th Cir. 2000) ................................................................52

*Kayes v. Pacific Lumber Co.,*
  51 F.3d 1449 (9th Cir. 1995) ...............................................................51

*Kirschbaum v. Reliant Energy, Inc.,*
  526 F.3d 243 (5th Cir. 2008) ..................................... 22, 25, 28, 31, 38

*Kling v. Fidelity Mgmt. Trust Co.,*
  323 F. Supp. 2d 132 (D. Mass. 2004) ..................................................50

*Krohn v. Huron Mem'l. Hosp.,*
  173 F.3d 542 (6th Cir. 1999) ...............................................................41

*Kuper v. Iovenko,*
  66 F.3d 1447 (6th Cir. 1995) ..........................................................25, 37

*LaLonde v. Textron, Inc.,*
  369 F.3d 1 (1st Cir. 2004) ....................................................................33

*LaLonde v. Textron, Inc.,*
  270 F. Supp. 2d. 272 (D.R.I. 2003) ......................................................51

*LaRue v. DeWolff, Boberg & Assocs.,*
  552 U.S. 248 (2008) .............................................................................29

*Leigh v. Engle,*
  727 F.2d 113 (7th Cir. 1984) ...............................................................29

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
  507 U.S. 163 (1993) .............................................................................19

*Lockheed Corp. v. Spink,*
  517 U.S. 882 (1996) .............................................................................52

*LoPresti v. Terwilliger,*
  126 F.3d 6 (2d Cir. 1997) .....................................................................48

*Lowen v. Tower Asset Mgmt., Inc.,*
  829 F.2d 1209 (2d Cir. 1987) ..............................................................49

*Mathews v. Chevron Corp.,*
  362 F.3d 1172 (9th Cir. 2004) .............................................................41

*McMahon v. McDowell,*
  794 F.2d 100 (3d Cir. 1986) ...........................................................46, 50

*Mertens v. Hewitt Associates,*
  508 U.S. 248 (1993) .........................................................................29, 48

*Metro. Life Ins. Co. v. Glenn*,
  554 U.S. 105 (2008) ............................................................................................. 46

*Meyer v. Berkshire Life Ins. Co.*,
  250 F. Supp. 2d 544 (D. Md. 2003) ..................................................................... 50

*Moench v. Robertson*,
  62 F.3d 553 (3d Cir. 1995) ........................................................................... *passim*

*Mohamed v. Jeppesen Dataplan, Inc.*,
  579 F.3d 943 (9th Cir. 2009) ............................................................................... 19

*Morrison v. MoneyGram Int'l.*,
  607 F. Supp. 2d 1033 (D. Minn. 2009) ................................................................ 43

*N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*,
  18 F.3d 179 (2d Cir. 1994) ................................................................................... 53

*National Football Scouting Inc. v. Continental Assurance Co.*,
  931 F.2d 646 (10th Cir. 1991) ............................................................................. 50

*Nelson v. Ipalco Enters.*,
  1:02-cv-0477,
  2005 U.S. Dist. LEXIS 16909 (S.D. Ind. Aug. 11, 2005) .................................... 35

*Nelson v. IPALCO Enters.*,
  480 F. Supp. 2d 1061 (S.D. Ind. 2007) ................................................................ 43

*Nieto v. Ecker*,
  845 F.2d 858 (9th Cir. 1988) ............................................................................... 53

*Page v. Impac Mortg. Holdings, Inc.*,
  No. SACV 07-1447 AG (MGLx),
  20909 WL 890722 (C.D. Cal. Mar. 31, 2009) ..................................................... 42

*Pennsylvania Federation, Brotherhood of Maintenance of Way Employees v.
  Norfolk Southern Corp. Thoroughbred Ret. Inv. Plan*,
  No. 02-9049,
  2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) .......................................... 35

*Pietrangelo v. NUI Corp.*,
  No. 04-3223, 2005 U.S. Dist. LEXIS 40832 (D.N.J. July 20, 2005) ................... 23

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ............................................................................... 25

*Quan v. Computer Sciences Corp.*,
  623 F.3d 870 (9th Cir. 2010) ....................................................................... *passim*

viii

*Rankin v. Rots*,
   278 F. Supp. 2d 853 (E.D. Mich. 2003)................................................37

*Rankin v. Rots*,
   220 F.R.D. 511 (E.D. Mich. 2004) ......................................................44

*SEC v. Gemstar-TV Guide Intern., Inc.*,
   367 F.3d 1087 (9th Cir. 2004) .............................................................19

*Sherrill v. Federal-Mogul Corp. Ret. Programs Comm.*,
   413 F. Supp. 2d 842 (E.D. Mich. 2006)................................................34

*Stein v. Smith*,
   270 F. Supp. 2d 157 (D. Mass. 2003) ..................................................42

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
   250 F.3d 87 (2d Cir. 2001)...................................................................50

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996).............................................................................19

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ...................................... 22, 23, 25, 31, 48

## STATUTES

Judiciary and Judicial Procedure, 28 U.S.C.
   § 1291....................................................................................................2
   § 1331....................................................................................................1
   § 2072(a) .............................................................................................29

Employee Retirement Income Security Act of 1974, 29 U.S.C.
   § 1002(13)...........................................................................................26
   § 1002(18)(i) .......................................................................................52
   § 1002(21)(A).......................................................................................48
   § 1002(a)(21)(A)(i) and (iii) ...............................................................49
   § 1002(34) .............................................................................................7
   § 1024(b)(4) ...................................................................................39, 40
   § 1104(a)(1)(B) ........................................................................... *passim*
   § 1104(a)(1)(D)....................................................................................24
   § 1104(a)(2)..........................................................................................31
   § 1105(a) ..............................................................................................47
   § 1106............................................................................................. 3, 53
   § 1106(a) ................................................................................................4
   § 1106(a)(1)......................................................................................3, 51
   § 1108..................................................................................................53

ix

§ 1108(b)..................................................................................................53
§ 1108(b)(2)............................................................................................53
§ 1108(e)(1)............................................................................................52
§ 1109(a) ..............................................................................................4, 29
§ 1132(a)(2)..............................................................................................3
§ 1132(e)(l)..............................................................................................1

Securities Act of 1933, 15 U.S.C.
§ 77k......................................................................................................29
§ 77l......................................................................................................29

## OTHER AUTHORITIES

*Gearren v. The McGraw-Hill Companies, Inc.*, 10-792-cv, Brief of *Amicus Curiae*
Hilda L. Solis, Secretary of the United States Department of Labor in Support of
Appellant Requesting Reversal (2d Cir. June 4, 2010), available at
http://www.dol.gov/sol/media/briefs/gearren(A)-6-4-2010.htm ...................26, 27

*In Re Citigroup ERISA Litig.*, 09-3804-cv, Brief of *Amicus Curiae* Hilda L. Solis,
Secretary of the United States Department of Labor in Support of Appellant
Requesting Reversal (2d Cir. Dec. 28, 2009), available at http://www. dol.gov/
sol/ media/briefs/ citigroup(A)-12-28-2009.htm ...........................................26, 27

S. Rep. No. 127, 93rd Cong. 2d Sess., *reprinted in* 1974 U.S. Code Cong. &
Admin. News 4838, 4865 (1974)........................................................................29

S. Rep. No. 93-127, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code. Cong. &
Admin. News 4838, 4863, 4866 (1973).................................................................30

## RULES

Federal Rules of Appellate Procedure (Fed. R. App. P.)
Rule 4(a)(1)(A).........................................................................................2
Rule 35(a)(2)..........................................................................................26
Rule 35(b)(1)(A) .....................................................................................26
Rule 35(b)(1)(B) .....................................................................................26

Federal Rules of Civil Procedure (Fed. R. Civ. P.)
Rule 8 ....................................................................................................43
Rule 8(a)(2) ............................................................................................19
Rule 12(b)(6)....................................................................................5, 6, 18

Federal Rules of Evidence (Fed. R. Evid.)
Rule 301 .................................................................................................29

## I.     STATEMENT OF JURISDICTION

Plaintiffs-Appellants Steve Harris, Dennis Ramos, Jorge Torres, Donald Hanks, and Albert Cappa ("Plaintiffs") assert claims against Defendants-Appellees ("Defendants")[1] under Section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1). **ER 132**. The District Court had jurisdiction over this action pursuant to ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l), and 28 U.S.C. § 1331. *Id.*

On March 2, 2010, the District Court entered an order granting Defendants' motion to dismiss, with leave to file an amended complaint (the "March 2010 Order"). **ER 14-35**. On June 18, 2010, the District Court entered an order granting Defendants' motion to dismiss the First Amended Complaint (the "FAC"), with prejudice (the "June 2010 Order"). **ER 1-13**. The June 2010 Order incorporated, in various respects, the March 2010 Order (the March 2010 Order and the June 2010 Order are hereinafter, collectively, referred to as the "Orders"). The June 2010 Order constitutes a final order and judgment that disposes of all of Plaintiffs' claims.

---

[1]     Defendants are: Amgen, Inc. ("Amgen"); Amgen Manufacturing, Limited ("AML"); Kevin W. Sharer, Frank J. Biondi, Jerry D. Choate, Frank C. Herringer, Gilbert S. Omenn, David Baltimore, Judith C. Pelham, Frederick W. Gluck, and Leonard D. Schaeffer (the "Director Defendants"); and Jacqueline Allred, Raul Cermeno, Jackie Crouse, Lori Johnston, Charles Bell, and Michael Kelly (the "Fiduciary Committee Defendants"). **ER 133-141.**

On June 24, 2010, Plaintiffs filed a timely Notice of Appeal under Fed. R. App. P. 4(a)(1)(A).  **ER 36-87**.  This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

## II.    ISSUES PRESENTED FOR REVIEW

Plaintiffs brought this action on behalf of the Amgen Retirement and Savings Plan (the "Amgen Plan") and the Retirement and Savings Plan for Amgen Manufacturing, Limited (the "AML Plan") (collectively, the "Plans"), and a Class of participants and beneficiaries of those Plans at any time from May 4, 2005, through March 9, 2007 (the "Class Period").  **ER 129**.  Plaintiffs allege, *inter alia*, that Defendants breached their fiduciary duties under ERISA by allowing the Plans and their participants to purchase and hold a fund consisting almost entirely of Amgen common stock (hereinafter referred to either as the "Amgen Stock" or "the Amgen Stock Fund") during the Class Period, when Amgen Stock was an imprudent retirement investment and when material adverse information concerning Amgen was not disclosed to participants in the Plans.

The District Court dismissed the FAC, holding that it did not adequately allege a breach of fiduciary duty by any of the Defendants under the applicable provisions of ERISA.  The questions on this appeal are the following:

1.    Whether the FAC adequately alleges that Defendants breached their fiduciary duty of care and loyalty under ERISA §  404(a)(1)(B), 29 U.S.C.

2

§1104(a)(1)(B), by permitting the Plans to invest in Amgen Stock when such investment was imprudent, and in that regard whether Defendants are entitled to a presumption of prudence at the pleading stage.

2.    Whether the FAC adequately alleges that Defendants breached their fiduciary duty of loyalty under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by failing to provide material information to the Plans' participants regarding Amgen.

3.    Whether the FAC adequately alleges that Defendants breached other fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), including the duty to monitor other fiduciaries and the duty of certain of the Defendants to avoid conflicts of interest.

4.    Whether the FAC adequately alleges that Defendant Amgen was a "fiduciary" under ERISA with respect to the purchase and retention of Amgen Stock by the Plans.

5.    Whether the FAC adequately alleges a Prohibited Transaction Claim under ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1).

## III.    STATEMENT OF THE CASE

### A.    Nature Of The Case

This is an action brought under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), by and on behalf of participants in the Plans to recover damages for breach by

3

Defendants of their fiduciary duties under ERISA § 409(a), 29 U.S.C. § 1109(a). **ER 130-131**.

Plaintiffs are current or former employees of Amgen and its subsidiaries (including, but not limited to, AML) who relied on their investments in the Plans to save for their retirements, and who have collectively lost over $100 million because of Defendants' failure to fulfill their statutory fiduciary duties under ERISA. **ER 208**.

Specifically, Counts I and II of the FAC allege that Defendants breached their fiduciary duty of care and loyalty under ERISA by allowing Amgen Stock to remain as an investment option when that stock was not a prudent investment option. **ER 214-220**. Count III of the FAC alleges that Defendants violated their fiduciary duty of loyalty under ERISA by failing to disclose material information about Amgen to the Plans' participants. **ER 220-223**. Count IV of the FAC alleges that Defendants breached their fiduciary duty under ERISA to monitor other fiduciaries and provide them with sufficient information sufficient to perform their duty to oversee the Plans' investments. **ER 223-226**. Count V of the FAC alleges that Defendants are liable for breaches of fiduciary duties by their "co-fiduciaries." **ER 227-228**. Count VI of the FAC alleges that Defendants violated ERISA § 406(a), 29 U.S.C. § 1106(a), by causing the participants of the Plans to overpay for their purchases of Amgen Stock. **ER 228-394**.

4

**B.     Prior District Court And Appellate Proceedings**

On August 20, 2007, Plaintiffs Steve Harris and Dennis Ramos filed the initial complaint in this proceeding. **ER 251**. On February 1, 2008, pursuant to Defendants' motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the District Court dismissed Plaintiff Harris's claims, with prejudice, based on the determination that he was without standing to sue under ERISA because he had withdrawn all of his assets from the Amgen Plan prior to filing his complaint. **ER 256**. The District Court also dismissed Plaintiff Ramos's claims, with prejudice, based on the determination that his only interest was in the AML Plan and he did not have a viable claim against any of the fiduciaries named in the pleading. *Id.*

On July 14, 2009, pursuant to the appeal of Plaintiffs Harris and Ramos, this Court reversed the District Court's dismissal. *Harris v. Amgen, Inc.*, 573 F.3d 728 (9th Cir. 2009). The Court held that Plaintiff Harris had standing to sue under ERISA because he was a participant in the Amgen Plan at the time of the alleged wrongdoing that allegedly damaged his interests, even though he was not an Amgen Plan participant at the time he brought his lawsuit. *Id.* at 735-36. The Court also held that Plaintiff Ramos should have been granted leave to amend his complaint to name the proper fiduciaries of the Plans. The Court remanded the

case to the District Court for further proceedings consistent with its ruling.  *Id.* at 735-37.

On November 12, 2009, Plaintiffs filed a Consolidated Complaint.  **ER 268**. On March 2, 2010, upon Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), the District Court dismissed the Consolidated Complaint based on its purported failure to adequately allege the fiduciary status of certain of the Defendants and to adequately allege a fiduciary breach against any of the Defendants under ERISA.  **ER 20-25**.  The District Court, however, granted Plaintiffs leave to file an amended complaint.  **ER 34-35**

On March 23, 2010, Plaintiffs amended the Consolidated Complaint with the FAC.  **ER 127-233**.  On June 18, 2010, upon Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), the District Court dismissed the FAC, this time with prejudice.  **ER 1-12**.  Incorporating in various respects the reasoning of its prior March 2010 Order, the District Court found that while the FAC adequately alleged the fiduciary status of all named Defendants other than Amgen, it failed to adequately allege that any fiduciary breaches were committed by any of the Defendants under ERISA.  *Id.*

On June 24, 2010, Plaintiffs timely appealed the District Court's dismissal. **ER 36-87.**

6

## IV.   STATEMENT OF FACTS

### A.   The Plans

The Plans are "defined contribution plans" within the meaning of ERISA.[2] Amgen established the Plans to provide retirement benefits to its employees, subject to the provisions of ERISA. **ER 147-149**.

As Defendants conceded below, the Plans were "not designed to funnel employee pension money into company stock." **ER 126.** Rather, throughout the Class Period, the Plans merely ***permitted*** Defendants to offer the Amgen Stock Fund as one of 25 "investment alternatives." **ER 116-118**.[3] Indeed, the Fidelity Freedom Fund, not the Amgen Stock Fund, was the "default" retirement investment under both Plans if participants failed to direct their investments. **ER 106-108, 116-118**.[4]

In addition, the Plans expressly required the fiduciaries of the Plans to review the performance of all the investment funds from time to time, ***including***

---

[2]    In a "defined contribution plan," retirement benefits are based solely on the amount contributed to the participant's individual account, and any income, expenses, gains or losses are allocated in turn to each such participant's account. 29 U.S.C. § 1002(34).

[3]    Specifically, Section 6.1 of both Plans provided that the investment options "*may* include provision for the separation of assets into separate Investment Funds, including a Company Stock Fund." **ER 95, 112**. (Emphasis added.)

[4]    Only as of May 7, 2008 – more than one year ***after*** the Class Period ended – were the Plans amended to require the Amgen Stock Fund as an investment alternative in the Plans. **ER 121-123**.

7

*the Amgen Stock Fund*, and expressly allowed the fiduciaries to eliminate any investments at their discretion. **ER 101, 106-108, 116-118**.

Nonetheless, Defendants never reviewed nor monitored the performance of the Amgen Stock Fund during the Class Period. **ER 130, 217, 223-226**. Thus, it remained in the Plans during the Class Period even though it was an imprudent retirement investment. Indeed, during the Class Period, it was the largest asset in both Plans. **ER 148**.

### B.    The Plaintiffs

During all or part of the Class Period, Plaintiffs Harris and Donald Hanks held individual accounts in the Amgen Plan, which included holdings in the Amgen Stock Fund. **ER 132-133**. During the Class Period, Plaintiffs Ramos, Jorge Torres, and Albert Cappa held individual accounts in the AML Plan, which included holdings in the Amgen Stock Fund. *Id.* All of the Plaintiffs were damaged as a result of a decline in the value of the Amgen Stock Fund in the Plans. **ER 133**.

### C.    The Defendants

#### 1.    Amgen

Amgen is a global biotechnology company that develops, manufactures and markets human therapeutics in the areas of supportive cancer care. Its principal products include Aranesp® and EPOGEN®. **ER 133-134**.

8

Amgen is the "Registrant" of both Plans, and is identified in the Amgen Plan as the "named fiduciary," "administrator" and the "plan sponsor" of the Amgen Plan. **ER 100-102, 133-134**.

Moreover, under the Amgen Plan, "[t]o the extent that the Plan requires an action under the Plan to be taken by [Amgen], the party specified in this Section 15.1 shall be authorized to act on behalf of [Amgen]." **ER 100-102**. Section 15.1 then lists the Global Benefits Committee (hereinafter, the "GBC") as having certain specific rights, powers and duties, and the Fiduciary Committee (defined below) as having certain other specific rights, powers and duties. *Id.* The Board of Amgen never appointed a GBC. **ER 102**. Therefore the rights, powers and duties of the GBC listed in § 15.1(a) of the Amgen Plan fell to the Amgen Board. *Id.* Accordingly, the actions of the Amgen Board and the Fiduciary Committee, with respect to the rights, powers and duties assigned by the Amgen Plan to the GBC and the Fiduciary Committee, were also the acts of Amgen.

In addition, the Amgen Plan states that Amgen "shall have the control over and management of assets of the Plan . . . to the extent of having the authority . . . (d) to direct the investment of any Plan assets not assigned to an Investment Manager." **ER 99-100**. Therefore, to the extent that Amgen did not appoint an Investment Manager for the Amgen Stock Fund (and Plaintiffs cannot know prior

9

to discovery with certainty whether Amgen did or did *not* make such appointment), Amgen is responsible for controlling and managing the Amgen Stock Fund.

### 2.    AML

AML is a wholly owned subsidiary of Amgen and operates a manufacturing facility in Puerto Rico (the "Juncos Facility").  **ER 134**.

AML is identified in the AML Plan as the "administrator" and the "sponsor" of the AML Plan.  **ER 113, 116**.  AML is also "a named fiduciary with respect to control over and management of the assets" of the AML Plan, and is responsible for directing "the investment of any Plan Assets not assigned to an Investment Manager."  **ER 113, 134**.

### 3.    The Director Defendants

During all or part of the Class Period, Defendants Sharer (Amgen's President, Chief Executive Officer, Chairman of Amgen's Board, and Chairman of Amgen's Executive Committee), Biondi, Choate, Herringer, Omenn, Baltimore, Pelham, Gluck, and Schaeffer (collectively referred to herein as the "Director Defendants") were each members of the Amgen Board of Directors.  **ER 134-138**. Defendants Biondi, Herringer, Gluck and Schaeffer also served on the Executive Committee during the Class Period, and Defendants Biondi (Chairman of Amgen's Audit Committee), Herringer, Omenn, Baltimore and Pelham were members of Amgen's Audit Committee during the Class Period.

Under the Amgen Plan, the Director Defendants or their delegates were instructed to appoint a GBC for purposes of "performing certain investment and administrative functions with respect to the [Amgen] Plan." **ER 102, 141**. However, the Amgen Plan also states that "if at any time the Board … has not appointed a [GBC], the Board … shall act as the [GBC]." *Id.* The Amgen Board never appointed a GBC, and the Director Defendants were therefore given the powers and duties that would otherwise be the province of the GBC, including all of the powers and duties listed in Article 15, Section 15.1(a) of the Amgen Plan, which included the duty to appoint the Fiduciary Committee. **ER 100-102, 134-138, 141-144, 154, 219, 225-226**.[5]

### 4.    The Fiduciary Committee Defendants

During all or part of the Class Period, Defendants Allred (Amgen's Director of Benefits), Cermeno (AML's Executive Director of Finance), Bell (Amgen's Vice President of Compensation and Benefits), Crouse (Amgen's Vice President of Tax), Johnston (Amgen's Vice President of Human Resources) and Kelly

---

[5]    The AML Plan does not expressly provide for the appointment of a fiduciary committee for the AML Plan, although AML's Summary Plan Description ("SPD") states that "The Plan Fiduciary Committee has selected several investment alternatives you may use" and "reviews performance of the selected funds periodically." **ER 116**.    While never formally constituted, Defendants Allred and Cermeno served on the AML Fiduciary Committee until January 2007. **ER 138-139, 142-143**.    As of January 2007, the Fiduciary Committee for Amgen also became the Fiduciary Committee for the AML Plan. **ER 138-139**.

(Amgen's Vice President of Finance and Chief Accounting Officer) (collectively referred to herein as the "Fiduciary Committee Defendants") were members of the Fiduciary Committee governing the Amgen Plan and the AML Plan. **ER 138-141**.

Under the Amgen Plan, the Amgen Plan Fiduciary Committee had the ability and responsibility "to review the performance of the Investment Funds [which included the Amgen Stock Fund] on a periodic basis and to report and make recommendations with respect to such Investment Funds . . . ." **ER 101, 116, 141** ("The Plan Fiduciary Committee reviews the performance of the selected investment funds [including the Amgen Stock Fund] periodically and has authority to replace investment funds and add additional ones."). Beginning in January 2007, the Amgen Plan Fiduciary Committee also acted as the Fiduciary Committee for both the Amgen Plan and the AML Plan. **ER 139**.

### D. Defendants' Breaches Of Their Fiduciary Duties Under ERISA

The FAC alleges that Defendants acted imprudently by allowing the Plans to acquire and hold Amgen Stock during the Class Period, despite knowing that Amgen was engaged in unsustainable business practices, that there were serious safety concerns regarding its two most important drugs, and that the Amgen Stock was trading at artificially inflated prices because adverse information had been withheld from the investing public (which included the participants in the Plans).

**ER 205-206, 215-228**.

12

During the Class Period, sales of Erythropoiesis-Stimulating Agents ("ESAs") were crucial to Amgen, with sales of Aranesp® and EPOGEN® (both ESAs) alone accounting for approximately one-half of Amgen's total revenue during the Class Period. **ER 177**. For the years ended December 31, 2004, 2005, 2006, and 2007, Aranesp® alone was Amgen's top-selling drug and generated 25-30% of Amgen's worldwide revenue. *Id*.

A substantial amount of the sales of Aranesp® and EPOGEN® during the Class Period were derived from Amgen's "off-label" marketing of the two drugs. For example, Amgen estimated that 39% of its $761 million in U.S. sales in the fourth quarter of 2006 was from off-label uses by physicians. **ER 176**. Because "off-label" marketing is illegal, those sales and the revenue derived from them could not be sustained. **ER 168-202**.

At the same time, Amgen also faced significant safety and efficacy concerns for Aranesp® and EPOGEN®. In October 2006, a group of Danish researchers halted a clinical study of head and neck cancer patients treated with Aranesp® because more deaths occurred in patients taking Aranesp® than those taking a placebo. **ER 164**. The negative results of this and other clinical studies were concealed until February 16, 2007, when a publication entitled *The Cancer Letter* published an article about the results of the study. **ER 163-164, 171, 180-182, 194, 207**. On March 21, 2007, Amgen received a letter from the Chairmen of the House

13

Subcommittee on Oversight & Investigation of the Committee on Energy & Commerce which questioned Amgen's studies, the promotion of Aranesp® and EPOGEN®, its communications with the Food and Drug Administration ("FDA"), and its "off-label" sales to physicians. **ER 198-199**.

After the FDA issued a "black box" warning for Aranesp® and the off-label marketing scheme was revealed by a Congressional investigation (triggering Medicare, Medicaid, and private insurers to deny coverage for Aranesp® at higher doses and for certain anemias and cancers), sales for Aranesp® between 2006 and 2007 fell by 23%. **ER 178**. By comparison, Amgen reported double-digit increases in U.S. sales for Aranesp® in 2005 and 2006 – before the adverse information was made public. **ER 177-178.**

Defendant Sharer, Amgen's CEO, described the events during the Class Period "as the most difficult in [Amgen's] history," resulting in an "unexpected $800 million to $1 billion hit to operating income due to safety concerns" about Aranesp®. **ER 204**. According to Sharer, sales for Aranesp® were cut in half, creating "the most challenging time in [his] 16 years" at Amgen. *Id*. The loss of ESA sales had a dramatic effect upon Amgen: the Company was forced to restructure worldwide operations and incurred $775 million in restructuring charges through December 31, 2007. **ER 204-205**. According to an article in *Forbes*, the perils of Amgen's "pushing some drugs too hard and too broadly"

14

came "home to roost" as Amgen announced its restructuring, laid off 2,600 people, and cut spending by $1.9 billion. **ER 204**.

The impact on the price of Amgen Stock was dramatic, as the market absorbed the various disclosures relating to safety concerns surrounding Amgen's ESAs and Amgen's improper marketing practices. After the announcement that the FDA would require a "black box" warning regarding off-label use of Aranesp,® at the end of the Class Period, on March 9, 2007, Amgen Stock declined 29.4% from a high of $86.17 to $60.86. **ER 207**.

The market price for Amgen's common stock continued to decline over the next several months as additional negative disclosures were made. In May of 2007, the FDA posted an analysis of Aranesp® and EPOGEN® on its website, noting that the drugs "were clearly demonstrated to be unacceptable" in high doses; a *New York Times* article detailed Amgen's practice of paying "rebates" in proportion to the prescribed amount of ESA; the Oncology Drugs Advisory Committee ("ODAC") voted to expand the "black box" warning on ESAs; Amgen received a subpoena from the New York Attorney General relating to their promotional activities; and Medicare limited reimbursement for Aranesp® to patients with severe anemia and denied reimbursement for certain types of cancer. **ER 201-202**. Following the release of these May 2007 disclosures, Amgen's Stock continued to decline to $57.33. **ER 207-208**.

15

In July 2007, California insurers and the U.S. Centers for Medicare and Medicaid Services announced specific limitations for the reimbursement of Amgen's ESAs.  Based on that news, Amgen Stock declined to $51 a share. **ER 203**.

Thus, Amgen Stock declined by more than 40% when the unsustainable business practices were disclosed.  **ER 203, 207**.  As a result, the Amgen Plan lost more than $102 million of the Amgen Plan participants' retirement savings and the AML Plan lost of $6.6 million of the AML Plan participants' retirement savings. **ER 208**.

In sum, as Amgen faced known safety issues relating to Aranesp$^®$ and EPOGEN$^®$, as it engaged in unsustainable off-label marketing of its two top-selling drugs, and as its stock was artificially inflated, Defendants imprudently failed to take any action of any kind to protect the Plans' participants with respect to the investments in Amgen Stock in their retirement accounts.  **ER 129-130, 168, 190-191, 198, 205-207, 216, 218, 221-222, 227, 229**.

## V.    SUMMARY OF ARGUMENT

The District Court ruled that the allegations of the FAC did not state a "plausible" claim that the fiduciaries of the Plans breached their fiduciary duties under ERISA.  The District Court was wrong.  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires a fiduciary of a retirement Plan to act "with the care, skill,

prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" (a standard that is often referred to as "the highest known to law"). The allegations of the FAC clearly meet this standard by alleging that Defendants permitted the Plans to offer Amgen Stock as retirement savings option at a time when they knew or should have known that the very products upon which Amgen's financial success depended were the subject of unsustainable business practices and significant safety concerns.

Indeed, in dismissing the FAC, the District Court appears to have applied a "presumption of prudence" standard, whereby fiduciaries are initially afforded a presumption that the investment in company stock is prudent, which must then be overcome by the plaintiff. That standard, however, to the extent that it is applicable on a motion to dismiss, does not apply to this case *because it only applies when the terms of a retirement plan require company stock to be included as an investment option*. The "presumption of prudence" does not apply to protect the fiduciaries of a plan who have complete discretion over whether to include company stock as a plan investment option, ***as is the case here***.

This Court's recent decision in *Quan v. Computer Sciences Corp.*, 623 F.3d 870 (9th Cir. 2010) ("*Computer Sciences Corp.*"), rendered after the District Court's June 2010 Order, supports this limitation. In *Computer Sciences*, this

17

Court adopted the presumption of prudence, but only where the retirement plan at issue expressly *required* the fiduciaries of the plan to provide the company's stock as an investment option (and only in the context of summary judgment).

The District Court also incorrectly held that the Plans' fiduciaries did not breach their fiduciary duty to provide all material information concerning Amgen to the Plans' participants, purportedly because no such duty exists in this Circuit. However, the duty to provide material information to a retirement plan's participants is the firmly established law of this Circuit, as this Court reaffirmed in *Computer Sciences*, and the FAC sufficiently alleges that Defendants breached that duty.

The District Court also incorrectly ruled that the FAC did not sufficiently allege any violation of other ancillary ERISA fiduciary duties, including the duty to monitor other fiduciaries and the duty to avoid conflicts of interest. These claims should also be sustained upon this Court's *de novo* determination that the FAC states "plausible" underlying ERISA claims.

## VI.    STANDARD OF REVIEW

A district court's dismissal of a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). A district court's conclusions of law, including the interpretation and application of a federal statute such as ERISA, is

18

also subject to *de novo* review. *See SEC v. Gemstar-TV Guide Intern., Inc.,* 367 F.3d 1087, 1091 (9th Cir. 2004). In addition, a district court's determination of ERISA fiduciary status is a conclusion of law that is reviewed *de novo* by this Court. *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (district court's decision that employer was acting as fiduciary is "a legal conclusion").

In its *de novo* review of the legal sufficiency of a complaint, the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). The Court must then determine whether the claim for relief "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility, in turn, is established when a plaintiff's allegations contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

Moreover, as the Eighth Circuit recently held, in a case decided after *Twombly* and *Iqbal*, an ERISA plaintiff is not subject to a pleading standard beyond what is required by Rule 8(a)(2) of the Federal Rules of Civil Procedure:

> No matter how clever or diligent, ERISA plaintiffs generally lack the
> inside information necessary to make out their claims in detail unless

19

and until discovery commences.  Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information.  If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.

*Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 598 (8th Cir. 2009).

## VII.  ARGUMENT

### A.    The District Court Erred In Finding That The FAC Did Not Plausibly Allege A Cause Of Action For Breach Of The Duty Of Care Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B)

#### 1.    The District Court's Analysis Of The FAC Was Flawed

In its June 2010 Order, the District Court stated that it "evaluates Plaintiffs' allegations according to the two standards that have been applied in the Ninth Circuit:  The '*Moench* standard' and the 'prudent man standard.'"  **ER 6.**  The District Court then stated that it "does not decide whether the *Moench* standard applies because, under either the *Moench* standard or prudent man standard, Plaintiffs have failed to allege sufficient facts to state a claim for breach of the fiduciary duty of care."  **ER 8.**

While the District Court appeared to recognize (correctly) that it would be problematic to apply that presumption of prudence to the facts of this case,[6] it

_____

[6]    The District Court observed that Defendants "do not directly dispute Plaintiffs' contention that the Plans ***did not require offering the Amgen Stock Fund as an investment option***" in the Plans.  **ER 7** (emphasis added).

20

nonetheless engaged in an extensive discussion (in the Orders) of how the allegations of the FAC did not overcome the presumption of prudence, while giving short shrift to the statutory "prudent man" standard. Regarding the "prudent man" standard, the District Court merely noted that a 29% decline in Amgen's common stock price was not sufficiently extreme, without even addressing, for example, the detailed allegations in the FAC concerning the critical importance of the unlawful (and eventually transitory) off-label sales to Amgen's financial success. Beyond that, the District Court did not analyze whether the facts alleged in the FAC met the "prudent man" standard.

Moreover, and tellingly, the District Court *did not cite a single case* (in either of the Orders) that directly supported its dismissal under the "prudent man" standard. The District Court cited *Syncor*, 516 F.3d at 1102, but merely for the proposition that a "'myriad of circumstances' could violate the prudent man standard." **ER 10-11, 31**. In its March 2010 Order, the District Court also cited the lower court's summary judgment opinion in *In re Computer Sciences Corp. ERISA Litig.*¸ 635 F. Supp. 2d 1128, 1134 (C.D. Cal. 2009), but without any explanation as to how that case – *which involved a plan that required investment in company stock* – related to the very different facts of this case.

Indeed, instead of conducting a "prudent man" analysis, the District Court speculated that liability might arise if the fiduciaries had terminated the Amgen

21

Stock Fund and it later rebounded. **ER 11**. The District Court's speculation was plainly incorrect. To support its analysis, the District Court relied on the district court summary judgment decision in *Computer Sciences*¸ 635 F. Supp. 2d at 1136, and *Kirschbaum v. Reliant Energy, Inc.,* 526 F.3d 243, 256 (5th Cir. 2008). However, both of those cases involved plans that ***required*** company stock as a plan investment option. In contrast, the fiduciaries of the Plans in this case could not have been subject to any liability if Amgen Stock later rebounded because, as discussed, *supra*, Section IV.A, they had complete discretion to terminate Amgen Stock as an investment alternative.[7]

The District Court also opined that the securities laws prevented Defendants from discontinuing Amgen Stock as an investment alternative under the Plans because Defendants would have been required to base that decision on non-public information. **ER 11, 31** (both citing *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 n.4 (9th Cir. 2004)). However, courts directly addressing the issue have consistently and correctly held otherwise. *See*, *e.g.*, *In re WorldCom,*

---

[7]    On a related point, the District Court stated that "discontinuing the Amgen Stock Fund would have brought 'about precisely the result [Plaintiffs] seek to avoid; a drop in the stock price.'" **ER 11** (citing *Computer Sciences,* 635 F. Supp. 2d at 1136). However, discontinuing Amgen Stock as a Plan investment option would not have brought about a decline in the stock price of Amgen, given that the holdings of Amgen Stock in the Plans represented only a small fraction of the total outstanding shares of Amgen common stock. In any event, the consequences of such action on Amgen's common stock price is an expert question and therefore not appropriate on a motion to dismiss.

22

*Inc.,* 263 F. Supp. 2d 745, 764 (S.D.N.Y. 2003) (holding that when a fiduciary has adverse information regarding the prudence of investing in company stock, it is a breach of his fiduciary duty "not to alert [the company] to the need to eliminate, or at least, to consider eliminating [the company] stock as one of the investment alternatives"); *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 865 (N.D. Ill. 2009) (rejecting "defendants' argument that they could not disclose certain information out of fear of violating securities laws"); *In re Xerox Corp. ERISA Litigation*, 483 F. Supp. 2d 206, 214 (D. Conn. 2007) (same); *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 U.S. Dist. LEXIS 40832, at *11-12 (D.N.J. July 20, 2005) (rejecting defendants' argument that compliance with fiduciary duties would result in violation of federal securities laws) (listing cases). Indeed, there are a number of actions that Defendants could have taken without running afoul of securities laws or insider trading rules. *See In re Enron Corp. Sec. & Derivative & ERISA Litig.*, 284 F Supp. 2d 511, 566 (S.D. Tex. 2003) (listing possible actions, including making disclosure to the market and contacting the regulatory authorities, to mitigate the plan's losses that would have been consistent with securities laws).[8]

---

[8]    *Wright*, 360 F.3d at 1098, is not to the contrary. In *Wright*, this Court did not address whether the fiduciaries of a retirement plan should be excused in any way from liability for failure to terminate company stock because such action would require them to act on inside information. Rather, the *Wright* Court was concerned with whether applying the *Moench* presumption would "inadvertently

### 2.    A Presumption Of Prudence Has No Place In The Court's *De Novo* Analysis Of The FAC, Notwithstanding The Court's Recent Decision In *Computer Science*

In *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), a case addressing the fiduciary duty of Employee Stock Ownership Plan ("ESOP") trustees, the Third Circuit noted the inherent tension between two congressional objectives under ERISA, which it described as a "razor's edge." *Id.* at 568-69. On one hand, ESOPs encourage employee stock ownership. *Id.* On the other hand, all plan fiduciaries (including ESOP fiduciaries) must act in accordance with their duties of loyalty and care under ERISA. *Id.*; *see also* 29 U.S.C. § 1104(a)(1)(D) (even when company stock is required, the fiduciaries of a plan must disregard that mandate insofar as it is not consistent with ERISA duties of prudence and loyalty); *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 569 (1985) (because "trust documents cannot excuse trustees from their duties under ERISA," a fiduciary may not blindly follow plan documents if doing so would cause damages to plan participants); *Esden v. Bank of Boston,* 229 F.3d 154, 173 (2d Cir. 2000) ("ERISA is quite explicit that [the terms of a plan and the Plan] are circumscribed by statutory requirements and restrictions," and therefore fiduciaries "cannot contract around the statute.").

---

encourage[] corporate officers to utilize inside information for the exclusive benefit of the corporation and its employees." *Id.* at n.4.

To reconcile that inherent tension, the Third Circuit created an "abuse of discretion" standard, holding that an ESOP fiduciary who follows the plan's mandate and "invests the assets in employer stock is entitled to the presumption that [he] acted consistently with ERISA by virtue of that decision." *Moench,* 62 F.3d at 571. Later, in *Edgar v. Avaya*, 503 F.3d 340, 347-49 (3d Cir. 2007), the Third Circuit extended the *Moench* presumption beyond ESOPs, to all eligible individual account plans ("EIAPs") that **require** company stock as a retirement savings option.[9]

In *Computer Sciences Corp.*, 623 F.3d 870, an appeal from a summary judgment decision in the district court, this Court adopted the "*Moench* presumption" (which it had previously declined to do in *Syncor,* 516 F.3d at 1102 and *Wright,* 360 F.3d at 1098 n.3), and affirmed summary judgment after discovery with respect to the plaintiffs' claims for the defendants' breach of fiduciary duties under ERISA. The Court explained that the presumption of prudence "insulate[s]" fiduciaries from ERISA's prudence standard of care

---

[9]    The Fifth and Sixth Circuits have also adopted the Third Circuit's *Moench* presumption. *See Kirschbaum*, 526 F.3d at 254; *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995)). The First, Second, Fourth, Seventh, Eighth, Tenth, Eleventh and District of Columbia Circuits have not decided the issue. The Seventh Circuit has indicated that it agrees with the rationale of the presumption but has not adopted it. *Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008). The issue is currently before the Second Circuit in *In re Citigroup ERISA Litigation*, cv-09-3804 (2d Cir. filed Dec. 28, 2009).

otherwise applicable to their actions, unless the plaintiffs can overcome an evidentiary presumption that the fiduciaries acted prudently, which requires "allegations that 'clearly implicate [] the company's viability as an ongoing concern or show 'a precipitous decline in the employer's stock . . . combined with evidence that the company is on the brink of collapse or is undergoing serious management.'" *Computer Sciences Corp.,* 623 F.3d at 883 (citations omitted).[10]

---

[10] The appellant in *Computer Science* has petitioned for an *en banc* hearing of the panel decision. *See* Appellants' Petition For Rehearing *En Banc* (filed October 21, 2010) (ECF No. 43). The Secretary of Labor, who has primary authority for enforcing and administering Title I of ERISA, 29 U.S.C. § 1002(13), has joined in that petition and has submitted a brief in which she has argued that the adoption of the presumption is an unjustified creation of federal common law that is contrary to the ERISA statute and conflicts with Supreme Court and Ninth Circuit decisions. As stated in the Secretary of Labor's brief in Support of *en banc* review:

> *En banc* rehearing is appropriate under Fed. R. App. P. 35(b)(1)(A) because this decision conflicts with Supreme Court and Ninth Circuit decisions concerning the court's authority to create federal common law that contravenes ERISA's plain language and purposes. The decision is also of exceptional importance under Fed. R. App. P. 35(a)(2) and (b)(1)(B) because it undermines the statute's remedial purposes by, among other things, improperly creating a "safe harbor" from fiduciary obligations for employer stock investments, and consequently putting billions of dollars in pension plan assets at undue risk.

*See Computer Sciences Corp.*, Nos. 09-56190, 09-56248, Brief of the Secretary of Labor, Hilda L. Solis, as *Amicus Curiae* In Support of Petition for *En Banc* Rehearing (filed November 1, 2010) (ECF No. 45). The United States Department of Labor has repeatedly taken the position that there should ***never*** be a presumption of prudence, even when a plan requires company stock. *See, e.g. In re Citigroup ERISA Litig.*, 09-3804-cv, Brief of *Amicus Curiae* Hilda L. Solis, Secretary of the

26

However, as the Court held:

> We adopt the *Moench* presumption because it provides a substantial shield to fiduciaries **when plan terms require or encourage the fiduciary to invest primarily in employer stock.**

*Id.* at 881 (emphasis added). The holding in *Computer Sciences* is thus limited, by its own terms and logic, to retirement plans in which the fiduciaries are **required** to offer company stock as an investment option. When that is the case, the elimination of company stock from the plan forces the fiduciaries to disregard the plan's mandate.

Indeed, the Court stressed that the ESOP in *Moench* "**required** the fiduciaries to invest 'primarily' in the employer's stock." *Computer Sciences Corp.*, 623 F.3d at 879 (emphasis added). The Court similarly noted that the rationale for applying the presumption was based largely on the theory that "[p]lans that tie employee compensation to the Company's success are widely believed to be good for employee productivity and loyalty." *Id.* at 881.

Stated another way, fiduciaries of a retirement plan are only liable for acting imprudently if they "could not have believed reasonably that continued adherence

---

United States Department of Labor in Support of Appellant Requesting Reversal (2d Cir. Dec. 28, 2009), available at http://www.dol.gov/sol/media/briefs/citigroup(A)-12-28-2009.htm; *Gearren v. The McGraw-Hill Companies, Inc.*, 10-792-cv, Brief of *Amicus Curiae* Hilda L. Solis, Secretary of the United States Department of Labor in Support of Appellant Requesting Reversal (2d Cir. June 4, 2010), available at http://www.dol.gov/sol/media/briefs/gearren(A)-6-4-2010.htm.

to the [plan's terms] was in keeping with the settlor's expectations of how a prudent trustee would operate." *Moench*, 62 F.3d at 571. *See also Computer Sciences*, 623 F.3d at 882. Thus, when there is *no* requirement in the plan for company stock to be an investment option, "the settlor's expectations" would not be thwarted in any respect if the fiduciaries determine not to include that stock as a plan investment alternative.

The presumption reconciles the inherent tension between complying with plan terms that require employer stock as an investment alternative and the more general fiduciary duty of prudence. As the Court explained in adopting the presumption, "the burden to rebut the presumption *varies directly with the strength of a plan's requirement that fiduciaries invest in employer stock* . . . [T]he more discretion a fiduciary has to invest in 'less-risky holdings as necessary,' the more his decisions will be subject to judicial scrutiny." *Computer Sciences*, 623 F.3d at 883 (citing *Kirschbaum*, 526 F.3d at 255 n.9) (emphasis added). Thus, where the fiduciaries simply *choose* to include company stock as a matter of their own discretion, there is no inherent tension between the plan provisions and the duty of prudence, and no tenable argument that a presumption of prudence should apply.

Here, as discussed, *supra*, Section IV.A above, the fiduciaries of the Plans had complete discretion over all the investment alternatives in the Plans (other than

28

the Fidelity Freedom Fund), including the Amgen Stock Fund, and the Plans did not even encourage employee company stock ownership.[11] Therefore, there is no tension between the terms of the Plans and Defendants' fiduciary duties under ERISA, and in that context the presumption of prudence should not apply.[12]

---

[11] The Amgen Stock Fund was the 24th of 25 authorized investments (none of which was required) under the Amgen Plan, and the 23rd of 24 authorized investments (again, none of which was required) under the AML Plan. **ER 106-108, 116-118**.

[12] For several additional reasons, any presumption of prudence should be limited to the narrowest possible circumstances. *First*, ERISA is a "comprehensive and reticulated statute," *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 258 (2008) (citing cases), and therefore federal courts should be reluctant to make substantive revisions to the ERISA statute. *See* S. Rep. No. 127, 93rd Cong. 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 4838, 4865 (1974) (Congress "expected that the courts will interpret this prudent man rule (and the other fiduciary standards) bearing in mind the special nature and purpose of employee benefit plans"); *Mertens v. Hewitt Associates*, 508 U.S. 248, 259 (1993) ("The authority of courts to develop a 'federal common law' under ERISA . . . is not the authority to revise the text of the statute"). *Second*, presumptions are generally considered evidentiary rules. *See* Fed. R. Evid. 301 ("a presumption imposes on the party against whom it is directed the burden of going forward with evidence . . ."). Therefore, they are solely the province of the Supreme Court (with the statutorily-specified involvement of the Judicial Conference and Congress) under 28 U.S.C. § 2072(a). *Third*, ERISA provides that fiduciaries who breach the duty of prudence and thereby cause a loss to the plan are "personally liable" for such loss. 29 U.S.C. § 1109(a). ERISA does not provide a "good faith" or any other exculpatory defense, such as those found in sections 11 and 12 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l. *Difelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007) ("Good faith does not provide a defense to a claim of a breach of these fiduciary duties; 'a pure heart and an empty head are not enough'") (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983)); *Leigh v. Engle*, 727 F.2d 113, 124 (7th Cir. 1984) ("Good faith is not a defense to an ERISA fiduciary's breach of the duty of loyalty).

### 3. The Allegations Of The FAC Clearly Support A Claim For Imprudence Under The Applicable "Prudent Man" Standard

Under the "prudent man" standard, first developed in trust law, plan fiduciaries are required to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). In adopting this standard, "Congress chose to hold plan fiduciaries to a high standard – in fact, 'the highest known to the law.'" *Johnson v. Couturier*, 572 F.3d 1067, 1082 (9th Cir. 2009) (citation omitted). *See also* S. Rep. No. 93-127, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 4838, 4863, 4866 (1973) ("the core principles of fiduciary conduct . . . place a . . . duty on every fiduciary to act in his relationship to the plan's fund as a prudent man in a similar situation and under like conditions would act"). The *Computer Sciences* Court indicated that this remains the appropriate standard in the Ninth Circuit (even though a heightened standard may apply when company stock is ***required*** as a plan investment). The Court stated:

> As we have explained, there are a "myriad of circumstances" that could violate the "prudent man" standard for investment of ERISA plan assets in a company's own stock. *Syncor*, 516 F.3d at 1102. Generally, "[a] court's task in evaluating a fiduciary's compliance with this standard is to inquire 'whether the individual trustees, at the time they engaged in the challenged transactions, employed the

30

appropriate methods to investigate the merits of the investment and to structure the investment.' *Wright,* 360 F.3d at 1097 (quoting *Donovan v. Mazzola,* 716 F.2d 1226, 1232 (9th Cir. 1983)).

*Computer Sciences,* 623 F.3d at 879.

The Court also stated, in discussing the exemption of fiduciaries from a duty to diversify investments under 29 U.S.C. § 1104(a)(2):

> On the other hand, "29 U.S.C. § 1104(a)(2) does not exempt fiduciaries [for EIAPs] from the first prong of the prudent man standard, which requires a fiduciary to act with care, skill, prudence, and diligence in any investment the fiduciary chooses." *Syncor,* 516 F.3d at 1102; *Wright,* 360 F.3d at 1097. Thus, fiduciaries are required to act "prudently" when determining whether or not to invest, or continue to invest, ERISA plan assets in the plan participants' employer's stock. This is true, even though the duty of prudence may be in "tension" with Congress's expressed preference for plan investment in the employer's stock. *Kirschbaum v. Reliant Energy, Inc.,* 526 F.3d 243, 253 (5th Cir. 2008).

*Computer Sciences,* 623 F.3d at 878-79.

Here, the FAC states a "plausible claim" that Defendant breached their fiduciary duty of care under ERISA by continuing to offer Amgen Stock as a retirement savings alternative in the Plans when it was not prudent to do so. Specifically, as summarized in, *supra*, Section IV.D above, the FAC alleges that Defendants failed to disclose safety issues raised by clinical trials and the FDA on Aranesp®, Amgen's top-selling drug, while aggressively promoting ESAs through improper and risky sales practices such as off-label use or use at excessive dosages. The FAC alleges that Defendants knew or should have known that

31

Amgen's financial success was dependent on these drugs, with Aranesp® alone amounting to 25-30% of Amgen's total product sales worldwide and ESAs amounting to 50% of Amgen's total sales during the Class Period. When the safety issues were finally disclosed, the result was a $1 billion hit to Amgen's operating income, and Aranesp® sales declined by 50%. As a result, the Plans lost tens of millions of dollars as the value of Amgen Stock in the Plans significantly declined.[13]

The cases are legion in which courts have denied motions to dismiss based on factual allegations similar to those in the FAC. In most of such cases, unlike here, the plans *required* company stock as a plan investment, and in many of those

---

[13] While Plaintiffs do not contend that the serious mismanagement and catastrophic losses of Aranesp® sales alleged in the FAC threatened to destroy Amgen, the impact of Defendants' conduct on the Company's financial and operating condition was dramatic. According to Defendant Sharer's own admissions (which likely underestimated the financial impact of the unlawful off-label sales program), the direct losses represented over 20% to 25% of Amgen's total income for 2007. **ER 177, 197.** Amgen's total Operating Income for the first quarter of fiscal year 2007 was only $1,400,000,000. *See* Amgen Inc., Quarterly Report (Form 10-Q), at 2 (May 9, 2007). **ER 204.** The losses alleged in the FAC therefore represent nearly an entire quarter's earnings for Amgen, a colossal blow to any company. Moreover, since the off-label drug sales were an ongoing business practice, the loss of revenue was not merely a "one-time" or isolated adverse event. Importantly, the impact of improper conduct cannot be properly assessed at the pleading stage. *See*, *e.g.*, *In re First American Corp. ERISA Litig.*, No. SACV 07-01357-JVS (RNBx), 2008 U.S. Dist. LEXIS 83832, at *11 (C.D. Cal. July 14, 2008) (unwilling to conclude at pleading stage that impact of wrongful conduct was "insignificant" compared to defendant's annual revenue).

cases the courts applied a presumption of prudence and still found the allegations of imprudence sufficient to overcome the presumption.

In *Syncor*, this Court noted that a "myriad of circumstances" might be "determinative of whether the fiduciaries failed to act with care, skill, prudence, or diligence," and held that ERISA's prudence requires a case-by-case analysis of the particular facts at issue. *Syncor,* 516 F.3d at 1102. The *Syncor* Court reversed the district court's summary judgment dismissal of an ERISA breach of fiduciary duty claim, where the plaintiffs had alleged that the company's stock was artificially inflated by an illegal scheme, finding that genuine issues of fact precluded summary judgment on the issue. *Id.* at 1102-03.

In *LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004), the First Circuit held that allegations that fiduciaries permitted plan investment in company stock while the stock was possibly inflated were sufficient to state a claim for imprudence under ERISA, even though the plan at issue mandated company stock and even though a presumption of prudence was applied.

In *In re Fremont Gen. Corp. Litig*, 564 F. Supp. 2d 1156, 1158-59 (C.D. Cal. 2008), the court held that allegations that the fiduciaries permitted a retirement plan to invest in company stock while there was serious mismanagement at the company were sufficient to state a claim for imprudence under ERISA.

33

In *In re Regions Morgan Keegan ERISA Litig. v. Morgan Asset Mgmt.*, 692 F. Supp. 2d 944, 953 (W.D. Tenn. Mar. 9, 2010), the court held that allegations that defendants allowed a company bond fund to remain an investment option in a plan despite undisclosed risks were sufficient to state a claim for imprudence under ERISA.

In *In re Merck & Co. Sec. Deriv. & ERISA Litig.*, MDL No. 1658, 2009 U.S. Dist. LEXIS 22923, at *12-14 (D.N.J. Mar. 23, 2009), the court denied a motion to dismiss where the plaintiffs alleged that the defendants invested retirement plan assets in company stock despite knowing that undisclosed problems with respect to one of its products posed great risk to the company stock price, which fell 40% when the product was withdrawn from the market, even though the court applied a presumption of prudence.

In *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 360-65 (S.D.N.Y. 2009), the court held that allegations that the defendants permitted investment in company stock in a plan when it was unduly risky due to, *inter alia*, undisclosed exposure to subprime investments, were sufficient to state an ERISA claim for imprudence.

Other cases on point include:   *Sherrill v. Federal-Mogul Corp. Ret. Programs Comm.*, 413 F. Supp. 2d 842, 859-60 (E.D. Mich. 2006) (ERISA claim held to be viable where the plaintiffs alleged that the defendants breached fiduciary

34

duties by allowing a retirement plan to continue to invest in company stock after such investment became imprudent due to litigation against the company, even though company stock was mandated by the plan); *In re The Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 793-94 (N.D. Ohio 2006) (allegations that the defendants knew of inflated earnings were sufficient to state an ERISA claim for imprudence, even though a presumption of prudence was applied); *Nelson v. Ipalco Enters.*, 1:02-cv-0477, 2005 U.S. Dist. LEXIS 16909, at *10-12 (S.D. Ind. Aug. 11, 2005) (denying summary judgment on claim brought under ERISA for permitting investment in risky company stock); *Pennsylvania Federation, Brotherhood of Maintenance of Way Employees v. Norfolk Southern Corp. Thoroughbred Ret. Inv. Plan*, No. 02-9049, 2004 U.S. Dist. LEXIS 1987, at *23 (E.D. Pa. Feb. 4, 2004) (ERISA claim for breach of fiduciary duty against fiduciaries was held to be viable where the plaintiff alleged that "fiduciaries knew or should have known of some information that would lead a reasonable person to question the prudence of further investment" in a company stock fund, even though presumption of prudence was applied); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1224-25 (D. Kan. 2004) (allegations of negative public and non-public information concerning the financial condition of he company held to be sufficient to state a claim for imprudence under ERISA, even though company stock was mandated by the plan); *In re Honeywell Int'l. ERISA Litig.*, No. 03-1214,

35

2004 U.S. Dist. LEXIS 21585, at *38-40 (D. N.J. September 14, 2004) (allegations of inflation of the company's stock price due to misrepresentations about the success of a merger were sufficient to state claim for imprudence under ERISA); *In re ADC Telecommunications, Inc., ERISA Litig.*, Master File No. 03-2989 ADM/FLN, 2004 U.S. Dist. LEXIS 14383, at *18-22 (D. Minn. July 26, 2004) (allegation of non-public corporate malfeasance known by defendant-fiduciaries were held to be sufficient to state an ERISA imprudence claim); *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1368 (N.D. Ga. 2004) (allegations that fiduciaries knew or should have known the stock price was artificially inflated were held to be sufficient to state ERISA imprudence claim).[14]

### 4.    Even If The Presumption Of Prudence Applies To This Case, Its Application At The Pleading Stage Is Improper

Even if the presumption of prudence were found to apply under the facts alleged in the FAC (which it does not), the presumption should not be applied on a motion to dismiss. *Computer Sciences*, for example, was decided on a motion for summary judgment, as was *Moench*, on which it was based. *Moench*, 62 F.3d at

---

[14]    As noted in, *supra*, Section VII.A.3 above, the pleading bar courts understand that they must not be set the bar too high in at the pleading stage of an ERISA case. *See Braden*, 588 F.3d at 595-98 (the nature of ERISA imprudence claims – where liability hinges on deficient fiduciary processes to which ERISA plaintiffs have little or no access prior to discovery – requires that courts carefully guard against imposing any imposition of heightened pleading standards).

571-72 (reversing summary judgment for defendants). *See also Alvidres v. Countrywide Financial Corp.*, No. CV 07-05810-RGK (CTx), 2008 WL 819330, at \*2 (C.D. Cal. Mar. 18, 2008) ("Assuming the *Moench* presumption applies in this case, the determination of whether Plaintiff can overcome this presumption is properly made at the evidentiary stage of litigation, not at the pleading stage."); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 475 (S.D.N.Y. 2005) ("whether a plaintiff has overcome the presumption of prudence is an evidentiary determination that is ill-suited to resolution on a motion to dismiss"); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 492 (E.D. Pa. 2000) ("it would be premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption [of prudence]").[15]

---

[15]    *See also Kuper*, 66 F.3d at 1452; *In re Pfizer, Inc. ERISA Litig.*, No. 04-CV-10071 (LTS) (JFE), 2009 WL 749545, at \*11 (S.D.N.Y. Mar. 20, 2009); *In re First American Corp.*, 2008 U.S. Dist. LEXIS 83832, at \*11-15; *In re Fremont*, 564 F. Supp. 2d at 1158; *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d at 954 ("the district court's application of a presumption at the pleadings stage was improper") (quotations and citation omitted); *In re Goodyear*, 438 F. Supp. 2d at 794; *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 670 (E.D. Tex. 2004); *Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003). This is the position of the Department of Labor as well. *See In re Citigroup ERISA Litig.*, Brief of *Amicus Curiae* Supporting Appellant Requesting Reversal, No. 09-3804-cv (2d Cir. Dec. 28, 2009) ("application of a presumption at the pleadings stage was improper").

### 5.   Allegations Of "Impending Collapse" Should Not Be Required Where The Fiduciaries Are Free To Eliminate Company Stock

While often attributed to *Moench*, the *Moench* court never held that the "impending collapse" of the company is required to overcome the presumption of prudence. Rather, the presumption is overcome where "the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectation of how a prudent trustee would operate." *Moench*, 62 F.2d at 571. The Third Circuit later made clear that *Moench* does *not* require a company to be "on the brink of bankruptcy before a fiduciary is required to divest a plan of employer securities." *Edgar*, 503 F.3d at 349 n.13. *See also Kirschbaum,* 526 F.3d at 256 ("We do not hold that the *Moench* presumption applies only in the case of investments in stock of a company that is about to collapse"); *In re Ford Motor Co. ERISA Litig.,* 590 F. Supp. 2d 883, 908 (E.D. Mich. 2008) (listing cases, and rejecting "imminent collapse" standard).

Where, as here, the fiduciaries have full discretion to eliminate company stock from a plan, allegations of the non-viability of the company should hardly be required. Rather, all that should be required are allegations supporting a "plausible claim" that the fiduciaries "failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

38

like capacity and familiar with such matters would use in conducting similar business." 29 U.S.C. § 1104(a)(1)(B).

### B.     The District Court Erred In Finding That The FAC Did Not Plausibly Allege A Cause of Action For Failure To Provide Complete And Accurate Information To The Plans' Participants Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B)

The District Court mistakenly held that "the Ninth Circuit does not recognize a general affirmative duty to disclose investment information," and that therefore Defendants were not "obligated to inform plan participants of the negative studies associated with Aransesp®." **ER 32.** In this regard, the District Court stated that "ERISA fiduciaries are [only] obligated to disclose information about the plan itself and only upon written request." *Id.* (citing 29 U.S.C. § 1024(b)(4), which lists the specific matters such as annual reports and trust agreements than a fiduciary is obligated to provide upon written request). The District Court also ruled, with respect to Plaintiffs' claims based on affirmative misrepresentations, that Plaintiffs had failed to allege that they had detrimentally relied on Defendants' representations, and that the alleged misrepresentations made in SEC filings and press releases were made in Defendants' corporate rather than fiduciary capacity. *Id.*

The District Court's analysis was wrong with respect to both the alleged omissions and misrepresentations. It is well-established that a fiduciary's duty to disclose material information is not limited to providing information specifically

enumerated in 29 U.S.C. § 1024(b)(4), "but may in some circumstances extend to additional disclosures where the interests of the beneficiaries so require . . . .". *Acosta v. Pacific Enter.*, 950 F.2d 611, 618-19 (9th Cir. 1991). This Court reaffirmed this view in *Computer Sciences*, 623 F.3d 870, stating:

> We have recognized "[ERISA] fiduciaries breach their duties if they mislead plan participants or misrepresent the terms or administration of a plan. . . . A fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Barker* [*v. American Mobil Power Corp.,*] 64 F.3d [1397,] 1403 [9th Cir. 1995) (internal citations omitted). "[T]he same duty applies to 'alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to fund investment.'" *Edgar,* 503 F.3d at 350.

*Id.* at 886 (upholding the dismissal of the disclosure claims, but only after a thorough examination of the facts and circumstances of the alleged omissions and misrepresentations in the context of summary judgment.)[16] *See also Farr v. U.S. West Comms., Inc.*, 151 F.3d 908, 914 (9th Cir. 1998) ("ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative") (citations omitted); *In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*, No. 2:08-md-1919 MJP, 2009 WL 3246994, at *8 (W.D. Wash. Oct. 5, 2009) ("*WAMU*")

---

[16]    Whether information is "material" and therefore must be disclosed turns on whether "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the 'total mix' of information made available." *Computer Sciences*, 623 F.3d at 887 (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).

("Ninth Circuit recognizes that 'ERISA imposes upon fiduciaries a *general duty to disclose facts material to investment issues*'") (citation omitted, emphasis added); *Barker*, 64 F.3d at 1403 ("A fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information.") (citation omitted); *Mathews v. Chevron Corp.,* 362 F.3d 1172, 1183 (9th Cir. 2004).[17]

Here, the FAC alleges that Defendants failed to disclose significant problems regarding Amgen's main products, which were critical to Amgen's financial success. There is a substantial likelihood – in fact, given the importance

_____

[17]    Courts throughout the country are in accord. As the Eighth Circuit recently stated, in reversing the district court's dismissal of claim for the breach of the duty to disclose under ERISA:

> It is uncontroversial that the duty of loyalty requires fiduciaries to "deal fairly and honestly with all plan members," and it is a breach of this duty affirmatively to mislead a participant or beneficiary. Moreover, in some circumstances fiduciaries must on their own initiative "disclose any material information that could adversely affect a participant's interests."

*Braden,* 588 F.3d at 598 (internal citations omitted). *See also Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997) (duty under ERISA to disclose "complete and accurate information about [plan] options"); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999) ("we agree with . . . our sister circuits that the 'duty to inform . . . entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'"); *Glaziers & Glassworkers Union v. Newbridge Secs., Inc.*, 93 F.3d 1171, 1181 (3d Cir. 1996) (recognizing duty to disclose material information is the core of fiduciary responsibility).

41

of these products to Amgen's bottom line, a near certainty – that the disclosure of those omitted facts "would have been viewed by the reasonable investor as having altered the 'total mix' of information made available." *See* **ER 164, 167, 180, 186, 197-198**.

In addition, the FAC alleges that Defendants communicated with the Plans' participants by incorporating SEC filings by reference into the Plans' documents. **ER 86, 95, 109, 119**. Such incorporation triggers the fiduciary responsibility for the content of such filings, regardless of the capacity in which they were first made. *See, e.g.*, *WAMU*, 2009 WL 3246994, at *8-9 ("Courts have recognized that the act of incorporating SEC filings into Plan communications may give rise to ERISA liability"); *Page v. Impac Mortg. Holdings, Inc.*, No. SACV 07-1447 AG (MLGx), 2009 U.S. Dist. LEXIS 26992, at *13 (C.D. Cal. Mar. 31, 2009) ("The Court agrees with Plaintiff that Impac had a general duty to disclose and that Defendants' SEC filings, press releases, and investor conference calls may appropriately be examined to determine whether Defendants properly put the ERISA Class on notice of the prudence of the Company's stock"); *In re First Am. Corp.*, 2008 U.S. Dist. LEXIS 83832, at *4-5.[18]

---

[18]     Moreover, when statements are directed to plan participants as well as the investing public, they are made in the speaker's fiduciary as well as corporate capacity. *See, e.g.*, *Stein v. Smith*, 270 F. Supp. 2d 157, 173-74 (D. Mass. 2003) (finding that statements made by CEO that addressed "in particular [employees']

The District Court's ruling that Plaintiffs' disclosure claims did not sufficiently allege detrimental reliance was also contrary to applicable law. *First*, reliance by a plan's participants is presumed when a complaint, in compliance with Fed. R. Civ. P. 8 and ERISA, sufficiently alleges that the "alleged losses result from the breach." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1182-83 (D. Minn. 2004). *See also In re JDS Uniphase Corp. ERISA Litig.*, No. C-03-04743, 2005 WL 1662131, at *13 (N.D. Cal. July 14, 2005) (same); *Morrison v. MoneyGram Int'l.*, 607 F. Supp. 2d 1033, 1056 (D. Minn. 2009) (same); *In re General Motors ERISA Litig.*, No. 05-71085, 2006 U.S. Dist. LEXIS 16782, at *42-3 (E.D. Mich. Apr. 6, 2006) (same). Here, the FAC makes such allegations. **ER 222-223**.

*Second*, ERISA plaintiffs need not plead *individual* detrimental reliance to maintain an ERISA claim for omissions or misrepresentations because the relevant detrimental reliance is that *of the plan*, not the individual. *See*, *e.g.*, *In re First Am. Corp.*, 258 F.R.D. 610, 620 n.7 (C.D. Cal. July 27, 2009); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 191 (W.D. Mo. 2009) ("Because ERISA § 502(a)(2) focuses on plans, rather than individuals, the Court finds persuasive those cases which have

---

investments in [company] stock" are fiduciary communications for which liability may be imposed under ERISA); *Nelson v. IPALCO Enters.*, 480 F. Supp. 2d 1061, 1080-81 (S.D. Ind. 2007) (where CEO made statement to both employee-plan participants and other shareholders at a shareholder meeting that "the best is yet to come" for the company, statement was a fiduciary communication).

held that plaintiffs need not establish individual reliance in order to prevail")
(listing cases); *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 U.S. Dist.
LEXIS 90631, at *23 (S.D.N.Y. Dec. 14, 2006); *Rankin v. Rots*, 220 F.R.D. 511,
522-23 (E.D. Mich. 2004) (rejecting reliance argument where plaintiffs' "claims
relate[d] to defendants['] unitary actions with regard to the Plan" and defendants
"treated the entire class identically") (citing *In re IKON Office Solutions, Inc. Sec.
Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000)); *Brieger v. Tellabs, Inc.*, 245 F.R.D.
345, 354 (N.D. Ill. 2007) ("Because defendants do not dispute that they distributed
information in a Plan-wide and broad manner, the Court finds that individual
determinations as to plaintiffs' reliance on this information likely will be
unnecessary.").[19]

## C.   The District Court Erred In Dismissing Plaintiffs' Other ERISA Claims

To the extent that the Court finds that the underlying claims for the breach of
duty and loyalty have been adequately alleged, it should also find that the FAC
adequately alleges the breach of Defendants' other fiduciary duties set forth in the

---

[19]   In dismissing the ERISA disclosure claims, the District Court relied almost
exclusively on *In re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 U.S.
Dist. LEXIS 9719 (N.D. Cal. March 31, 2005).  However, the district court in
*Calpine* was simply mistaken in its holding that there was no duty to disclose
under ERISA other than the duty to disclose information about the plan itself
pursuant to written request.  *Id.* at *23-24.  Moreover, the plaintiffs in *Calpine*
conceded that the prospectuses at issue were *not* incorporated by reference into
plan documents.

FAC. **ER 217-229**. At a minimum, consideration of these ancillary claims should be remanded to the District Court for further consideration. *See*, *e.g.*, *Braden*, 588 F.3d at 603 (remanding the ERISA monitoring and co-fiduciary claims to the district court where they were derivative of the underlying ERISA claims and the district court did not consider those derivative claims).

Specifically, the FAC alleges that the Director Defendants breached their duty to monitor under ERISA when they appointed the Fiduciary Committee Defendants and failed to provide them with information concerning Amgen so that they could properly perform their fiduciary duties and determine whether Amgen Stock was an appropriate investment option for the Plans. **ER 223-226**. *See*, *e.g.*, *Sprint*, 388 F. Supp. 2d at 1232 (once the Board of Directors appoints the members of a Fiduciary Committee, it is not free to turn a blind eye to the appointees' performance as fiduciaries). Whether the Director Defendants breached their duty to monitor is a question of fact which should await the development of a full factual record. *See Alvidres v. Countrywide Financial Corp.*, No. CV 07-5810-RGK (CTx), 2008 WL 1700312, at *2 (C.D. Cal. Apr. 9, 2008); *In re Elec. Data Sys. Corp.,* 305 F. Supp. 2d at 671 (E.D. Tex. 2004) (remarking that "at this stage of the proceedings, the Court will not endeavor to define the duty to monitor's outer edges with no factual record to indicate how far this case may or may not push those edges").

The FAC also alleges that certain Defendants placed their interests as directors and senior officers of Amgen above the interests of the Plans and their participants, which led them to withhold adverse information from the Plans' participants and refrain from divesting the Plans of Amgen Stock. **ER 227-228**. *See, e.g., Braden*, 588 F.3d at 600 ("ERISA's duty of loyalty may require a fiduciary to disclose latent conflicts of interest which affect participants' ability to make informed decisions about their benefits"); *McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir. 1986) (ERISA fiduciaries must "'avoid placing themselves in a position where their acts as directors or officers of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees.'") (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).[20] The Supreme Court recently affirmed that a court should consider conflicts of interest even where the plan and relevant statutory language allow the conflict to exist. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

---

[20]     *See also*, *In re Morgan Stanley*, 696 F. Supp. 2d at 366 ("allegations sufficiently support, at the pleading stage, a claim for breach of the fiduciary duty to avoid conflicts of interest under ERISA"); *In re Pfizer*, 2009 WL 749545, at *13 ("These allegations of conflict of interest are stated sufficiently to meet the Rule 8 pleading standards"); *Dann v. Lincoln Nat. Corp.*, 708 F. Supp. 2d 481, 492 (E.D. Pa. 2010) ("It is impossible to determine the full extent of these conflicts and degree to which they motivated Defendants' decisions without allowing discovery to proceed"); *Banks v. Healthways, Inc.*, No. 3:08-0734, 2009 WL 211137, at *4 (M.D. Tenn. Jan. 28, 2009) ("conflict of interest does not exist simply because a fiduciary holds company stock and is paid according to company performance. . . . However, when those dual interests conflict, the duty of loyalty is implicated").

46

Finally, ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability for (1) a fiduciary's participation in, or concealment of, breaches of fiduciary duty by another fiduciary; (2) a fiduciary's enabling another fiduciary to commit a breach; or (3) a fiduciary's having knowledge of a breach by another fiduciary and failing to take reasonable steps to remedy that breach. The FAC alleges that Defendants violated all three prongs of ERISA § 405(a) because (1) they knew of Amgen's failures and inappropriate business practices, and of breaches by other fiduciaries, but took no action to remedy those breaches [**ER 227-228**]; (2) with knowledge of these breaches by Defendants, Amgen participated in the fiduciary breach in that it benefited from the sale or contribution of its stock to the Plans at prices that were disproportionate to the risks for the Plans' participants [**ER 205, 218-219, 228**] and likewise, the Director Defendants ignored their oversight responsibilities and thereby knowingly participated in the breaches [**ER 224-226**]; and (3) by not monitoring or taking other appropriate steps with respect to the Fiduciary Committee Defendants, the Director Defendants enabled the Fiduciary Committee Defendants' breach of duty. Such allegations are sufficient to meet the Rule 8 pleading standards. *See, e.g., In re Enron*, 284 F. Supp. 2d at 581 ("Under Department of Labor Interpretive Bulletin, 29 C.F.R. § 2509.75-5 [at] FR-10, a fiduciary must take all legal and reasonable steps to prevent or remedy a breach by

47

a co-fiduciary, including taking legal action against the co-fiduciary or informing the Department or the plan sponsor.").

### D. The Complaint Adequately Alleges The Fiduciary Status Of All Defendants, Including Amgen

A person may be a fiduciary by virtue of either being named as such, or by acting in a fiduciary capacity (*i.e.*, a "*de facto*" fiduciary) in regard to an ERISA plan. As to the latter, a person acts in a fiduciary capacity "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i) and (iii). This Circuit construes fiduciary status "liberally, consistent with ERISA's policies and objectives." *Alvidres*, 2008 WL 1700312, at *2. *See also Wright*, 360 F.3d at 1101-02 (citing 29 U.S.C. § 1002(21)(A)); *Ariz. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997).[21]

---

[21]    *See also Mertens*, 508 U.S. 248; *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) ("Congress intended ERISA's definition of fiduciary 'to be broadly construed'") (citation omitted); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511, 544 (S.D. Tex 2003) (fiduciary "is defined 'in functional terms of control and authority over the plan, . . . thus expanding the universe of persons subject to fiduciary duties – and to damages – under § 409(a)'").

The District Court correctly found that the FAC properly alleged that AML, the Director Defendants, and the Fiduciary Committee Defendants were all fiduciaries of the Plans. **ER 4-5** (*see supra* discussion of the fiduciary status in Section IV.C(1-4) above). However, the District Court ruled that the FAC failed to adequately allege Amgen's fiduciary status because, it reasoned, "Amgen delegated its fiduciary responsibilities and discretion to the GBC and Fiduciary Committee." **ER 3.**

The District Court's ruling was in error. Amgen is named the "named fiduciary" of the Amgen Plan. **ER 100-102, 134, 141-143, 152-154, 219, 225-226**. *See, e.g., Lowen v. Tower Asset Mgmt., Inc.,* 829 F.2d 1209, 1218-19 (2d Cir. 1987) (Congress included requirement of named fiduciary "so that responsibility for managing and operating the Plan – and liability for mismanagement – are focused with a degree of certainty") (internal quotations omitted). Contrary to the District Court's conclusion, Amgen never "delegated" its fiduciary responsibilities to either the GBC or the Fiduciary Committee. Rather, the Amgen Plan specifically identifies the entity who acts on behalf of Amgen with respect to specific matters. Section 15. 1 of the Amgen Plan states: "To the Extent that the Plan requires an action under the Plan to be taken by [Amgen], the party specified in this Section 15.1 shall be authorized to act on behalf of the Company." **ER 100-102**. The Amgen Plan then specifies certain "rights, powers and duties" that are

49

those of the GBC and the Fiduciary Committee [*id.*] and directs that the Amgen Board shall have the rights, powers and duties of the GBC if the GBC is not appointed, including the power and duty to appoint the Fiduciary Committee. *Id.* Therefore, the actions taken by the Director Defendants (in place of the GBC because a GBC was never appointed) and the Fiduciary Committee Defendants pursuant to § 15.1(a) and (b) of the Amgen Plan were also the actions of Amgen.

This is, in fact, a classic principal-agency relationship. Under basic corporate principles, a corporation can only act through its agents. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 101 (2d Cir. 2001). *See also In re JDS Uniphase Corp.*, 2005 WL 1662131, at *4 (holding that a company is a fiduciary to the extent that it appoints fiduciaries); *In re Pfizer Inc.*, 2009 WL 749545, at *67 (allegations of discretionary authority to appoint and remove fiduciaries sufficient for entity defendants to be fiduciaries).[22]

---

[22] Even without this principal-agent relationship, Amgen had effective control over the Director Defendants as well as the Fiduciary Committee Defendants. Therefore, any fiduciary breaches by those Defendants should be imputed to Amgen under the doctrine of *respondeat superior. See, e.g., American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc. Of the U.S.,* 841 F.2d 658, 665 (5th Cir. 1988); *McMahon,* 794 F.2d at 109; *Xerox,* 483 F. Supp. 2d at 222; *Kling v. Fidelity Mgmt. Trust Co.,* 323 F. Supp. 2d 132, 145-47 (D. Mass. 2004); *Meyer v. Berkshire Life Ins. Co.,* 250 F. Supp. 2d 544, 563-64 (D. Md. 2003). Whether an employee or agent was acting within the scope of his employment or agency for *respondeat superior* purposes is a question that should not be decided on a motion to dismiss. *See National Football Scouting Inc. v. Continental Assurance Co.,* 931 F.2d 646, 649-50 (10th Cir. 1991) (applying

Moreover, the Amgen Plan expressly provides that Amgen "shall have the control over and management of the assets of the Plan . . . to the extent of having the authority to . . . (d) direct the investment of any Plan assets not assigned to an Investment Manager." **ER 99-100**. Therefore, to the extent that Amgen did not assign the control over and management of the Amgen Stock Fund to an Investment Manager (and Plaintiffs believe that such assignment was *not* made, although they cannot be certain of this without taking discovery on the issue), Amgen retained the control and management role with respect to the Amgen Stock Fund.[23]

### E.    The District Court Erred In Dismissing Plaintiffs' Claim Brought Under ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1)

Section 406(a)(1), 29 U.S.C. § 1106(a)(1), of ERISA was adopted by Congress "to prevent employee benefit plans from engaging in transactions that would benefit parties in interest at the expense of plan participants and their

---

*respondeat superior* for ERISA and finding that question of fact concerning agency relationship precluded summary judgment); *Cannon v. MBNA Corp.,* No. 05-429 GMS, 2007 U.S. Dist. LEXIS 48901, at *9 (D. Del. July 6, 2007) (discovery necessary to determine applicability of *respondeat superior).*

[23]    The determination of fiduciary status is generally not appropriate on a motion to dismiss, and whether Amgen was a plan fiduciary here is particularly inappropriate given this provision in the Amgen Plan. *See, e.g., Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1461 (9th Cir. 1995)*; LaLonde v. Textron, Inc.*, 270 F. Supp. 2d. 272, 277 n.4 (D.R.I. 2003) (citing *Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 275 (3d Cir. 2001)).

beneficiaries." *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 858 (6th Cir. 2000) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996); *see also Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1418 (11th Cir. 1998) ("ERISA prohibits stock transactions between a plan and a 'party in interest' because of the obvious conflicts of interest and the high potential for abuse and injury to the plan").

Accordingly, a "party in interest" may only purchase stock on behalf of a plan for "adequate consideration." 29 U.S.C. § 1108(e)(1). Section 3(18) of ERISA defines "adequate consideration" as "the price of the security prevailing on a national securities exchange." 29 U.S.C. § 1002(18)(i).

Although the prices paid by the Plans for Amgen Stock were those listed on the National Association of Securities Dealers Automated Quotations (the "NASDAQ"), the FAC alleges that those prices were listed at artificially inflated prices. Consequently, the Plans' participants considerably over-paid for their "participation interests" in the Plans, in violation of § 1106(a)(1). **ER 129-130, 209, 218-219, 222, 227-229**. Because Defendants knew or should have known that the value of Amgen's Stock was artificially inflated at the time of these purchases, Defendants' continued purchases on behalf of the Plans at these prices was done at the expense of the Plans' participants. Accordingly, Plaintiffs sufficiently allege

52

that the Plans' purchase of Amgen's Stock constituted a prohibited transaction in violation of 29 U.S.C. § 1106.

The District Court held that "the purchase of a publically traded security at the prevailing market rate (even if inflated) qualifies as a transaction for 'adequate consideration,' thereby exempting the transaction from the provisions of § 406." **ER 34** (citing 29 U.S.C. § 1108(b)).  However, as the Eighth Circuit recently stated, "the statutory exemptions established by § 1108 are defenses which must be proven by the defendant." *See Braden*, 588 F.3d at 601 (citing, *inter alia*, *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (fiduciary engaging in transaction under § 1106(b) must prove the applicability of exemption under § 1108(e)).  As the *Braden* Court stated, where facts are alleged "amount[ing] to a 'direct or indirect . . . furnishing of services . . . between the plan and party in interest,'" the burden shifts to the defendants to show that "'no more than reasonable compensation [was] paid' for [those] services." *Id.* (citing 29 U.S.C. § 1108(b)(2); *N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir. 1994); *Nieto v. Ecker*, 845 F.2d 868, 873-74 (9th Cir. 1988)).  Accordingly, this claim should not be dismissed on the pleading because Defendants have not demonstrated that they are entitled to invoke the affirmative defense exemption of ERISA § 408, 29 U.S.C. § 1108.

## VIII. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask this Court to reverse the

June 2010 Order dismissing this Action, and remand the case to the District Court

for further proceedings.

DATED:  December 20, 2010

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT

_____

BETSY C. MANIFOLD

750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com

- and -

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
MARK C. RIFKIN
MICHAEL JAFFE
270 Madison Ave.
New York, NY  10016
Telephone:  212/545-4600
Facsimile:   212/545-4653
rifkin@whafh.com
jaffe@whafh.com

54

GAINEY & McKENNA
THOMAS J. MCKENNA
295 Madison Avenue
New York, NY 10017
Telephone: 212/983-1300
Facsimile: 212/983-0383
tjmckenna@gaineyandmckenna.com

*Attorneys for Plaintiffs- Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,541 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2002 in Times New Roman type style, 14-point font.

DATED:  December 20, 2010         WOLF HALDENSTEIN ADLER
                                    FREEMAN & HERZ LLP
                                  FRANCIS M. GREGOREK
                                  BETSY C. MANIFOLD
                                  RACHELE R. RICKERT


                                  _____
                                      BETSY C. MANIFOLD

                                  750 B Street, Suite 2770
                                  San Diego, CA 92101
                                  Telephone:  619/239-4599
                                  Facsimile:  619/234-4599
                                  gregorek@whafh.com
                                  manifold@whafh.com
                                  rickert@whafh.com

                                  WOLF HALDENSTEIN ADLER
                                    FREEMAN & HERZ LLP
                                  MARK C. RIFKIN
                                  270 Madison Ave.
                                  New York, NY  10016
                                  Telephone:  212/545-4600
                                  Facsimile:  212/545-4653
                                  rifkin@whafh.com
                                  jaffe@whafh.com

56

GAINEY & McKENNA
THOMAS J. MCKENNA

295 Madison Avenue
New York, NY 10017
Telephone:  212/983-1300
Facsimile:   212/983-0383
tjmckenna@gaineyandmckenna.com
tjmlaw2001@yahoo.com

*Attorneys for Plaintiffs-Appellants*

AMGEN:17924v2

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellants state that they are not aware of any related cases pending in this Court, other than those already identified as related by Appellant.

9th Circuit Case Number(s) | 10-56014

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) [                    ] .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) [                                    ]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) [12/20/2010] .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| | | |
|---|---|---|
| Daniel L. Keller | Stephen J. Fearon, Jr. | Steven O. Kramer |
| Stephen M. Fishback | Garry T. Stevens, Jr. | Jonathan D. Moss |
| Keller, Fishback & Jackson LLP | Squitieri & Fearon, LLP | Sheppard, Mullin |
| 18425 Burbank Blvd., ste. 610 | 32 East 57th Street, 12th Fl. | 333 S. Hope St., 43rd fl. |
| Tarzana, Ca 91356 | New York, NY 10022 | Los Angeles, CA 90071 |

Signature (use "s/" format) [s/ Marta Stasik]