**No. 10-56014**

---

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

STEVE HARRIS, *et al*.,
*Plaintiffs – Appellants,*

v.

AMGEN, INC., *et al*.,
*Defendants – Appellees.*

---

On Appeal from the United States District Court
for the Central District of California
No. CV 07-05442-PSG
The Honorable Philip S. Gutierrez

---

## OPPOSITION TO PETITION FOR REHEARING *EN BANC*

---

Mark C. Rifkin, Esq.
Michael Jaffe, Esq.
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600 Telephone
(212) 545-4653 Facsimile

Thomas J. McKenna, Esq.
GAINEY McKENNA &
  EGLESTON
295 Madison Avenue
New York, NY 10017
(212) 983-1300 Telephone
(212) 983-0383 Facsimile

Francis M. Gregorek, Esq.
Betsy C. Manifold, Esq.
Rachele R. Rickert, Esq.
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
(619) 239-4599 Telephone
(619) 234-4599 Facsimile

*Attorneys for Plaintiffs-Appellants*

770507

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ....................................................................... ii

I.      INTRODUCTION ...................................................................... 1

II.     BACKGROUND ........................................................................ 2

III.    ARGUMENT............................................................................. 4

        A.      Standards for En Banc Rehearing ...................................... 4

        B.      There Is No Conflict With the Supreme Court
                Warranting En Banc Review............................................ 7

                1.      The Panel Did Not Ignore Any New
                        "Pleading" Standards Set Forth in *Fifth Third*          7

                2.      The Panel Addressed Each of the Liability
                        Considerations Set Forth in *Fifth Third*               9

        C.      This Case Does Not Present A  Question Of
                "Exceptional Importance"...............................................14

CONCLUSION ..................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

770507

# TABLE OF AUTHORITIES

**<u>CASES</u>**                                                              **<u>Page(s)</u>**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................7, 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................7, 8

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)......................................................................10, 11

*Church of Scientology of California v. Foley*,
   640 F.2d 1335 (D.C. Cir. 1981) ...........................................................6

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014)..............................................................*passim*

*Gedek v. Perez*,
   No. 12-CV-6051L, 2014 U.S. Dist. LEXIS 174338
   (W.D.N.Y. Dec. 17, 2014) ...................................................................8

*Harris v. Amgen, Inc.*,
   738 F.3d 1026 (9th Cir. 2013)..............................................3, 4, 8, 13

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001).............................................................6

*Kelley v. Rambus, Inc.*,
   384 Fed. App'x 570 (9th Cir. 2010) ..................................................11

*Morrison v. Money Gram International, Inc.*,
   607 F. Supp. 2d 1056 (D. Minn. 2009)..............................................12

*Narayan v. EGL, Inc.*,
   616 F.3d 895 (9th Cir. 2010)..............................................................13

*Newdow v. U.S. Congress*,
   328 F.3d 466 (9th Cir. 2003)............................................................5, 6

*Quan v. Computer Sciences Corp.*,
623 F. 3d 870 (9th Cir. 2010) ........................................................................8, 9

*In re Schering Plough Corp ERISA Litigation*,
No. 04-2073, 2005 U.S. App. LEXIS 19826 (3d Cir. Sept. 15, 2005) ...............13

*United States v. American-Foreign S.S. Corp.*,
363 U.S. 685 (1960)........................................................................................5

*United States v. Doss*,
630 F.3d 1181 (9th Cir. 2011) .........................................................................13

*United States v. Newman*,
No. 13-1837-cr (L), 2014 U.S. App. LEXIS 23190 (2d Cir. Dec. 10, 2014).......11

## STATUTES AND RULES

15 U.S.C. § 78j(b)..........................................................................................10

29 U.S.C. § 1106(a)(1) ...................................................................................4

Employee Retirement Income Security Act
§ 404(a)(1)(A)...........................................................................................2
§ 405(a)......................................................................................................2
§ 406(a)......................................................................................................2
§ 406(a)(1) ................................................................................................4

Federal Rules of Appellate Procedure
35(a) ..........................................................................................................4
40................................................................................................................6

9th Cir. R. 35-1 ...............................................................................................5

770507

## I.   <u>INTRODUCTION</u>

On November 13, 2014, defendants-appellees ("defendants") filed a Petition for Rehearing En Banc (the "Petition") of the panel's October 30, 2014 decision reversing the district court's dismissal of this action. (Dkt. Entry #100.) By Order dated December 5, 2014 (Dkt. Entry #101), the Court directed plaintiffs-appellants ("plaintiffs") to submit a response to the Petition.

As discussed herein, there is no basis for the Court to grant en banc review of the panel's decision, in which it held that Counts II-VI of the complaint (the "Complaint") stated claims under ERISA and, accordingly, reversed the district court's dismissal.

*First*, the decision of the panel raises no conflict whatsoever with the precedents of this circuit or any other circuit, and contrary to defendants' contention it is fully consistent with the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) ("*Fifth Third*").

*Second*, the decision of the panel does not present any questions of "exceptional importance."

*Third*, defendants do not even seek en banc review of the panel's decision on the merits of the Complaint. Rather, they seek en banc review of the panel's decision *not to remand the action to the district court* to decide whether the Complaint states a claim. Therefore, there is even less reason for the Court to

770507

grant the extraordinary remedy of en banc review because the panel had before it everything it needed to conduct a *de novo* review of the pleading in light of *Fifth Third* and was not required to defer to the district court to first conduct that analysis.[1]

## II.    BACKGROUND

As is relevant to the Petition, Count II of the Complaint alleges a claim for breach of the duty of prudence under ERISA § 404(a)(1)(A), based on allegations that defendants included company stock in certain retirement plans (the "Plans") while that stock was an imprudent retirement investment.[2]

---

[1]  Prior to the panel's recent decision, the district court in this case has been reversed twice by this Court, first on its dismissal of the Complaint on "standing" grounds and then on its dismissal of the Complaint pursuant to the district court's incorrect analysis of the sufficiency of the pleadings.

[2]  The Complaint also alleges (1) a claim for breach of the duty of candor under ERISA § 404(a)(1)(A), based on defendants' failure to provide complete and accurate information to the Plans' participants (Count III); (2) a claim for breach of the duty to monitor under ERISA § 404(a)(1)(A), based on defendants' failure to monitor the fiduciaries they had appointed (Count IV); (3) a claim for co-fiduciary liability under ERISA § 405(a) (Count V); and (4) a claim for "prohibited transaction" liability under ERISA § 406(a), based on allegations that defendants offered company stock as an investment option while knowing that the stock was artificially inflated because of their own misconduct (Count IV).  Defendants do not question the panel's decision with respect to any of these other counts in the Complaint.  (The Complaint also alleged a claim for breach of the duty of loyalty under ERISA § 404(a)(1)(A), based on allegations that defendants had violated their fiduciary duty to avoid conflicts of interest (Count I), but plaintiffs did not pursue that claim on appeal.)

By Order dated March 2, 2010, the district court dismissed the Complaint in its entirety, with prejudice. ER 1-13. The district court's dismissal of Count II was based, in large part, on its application of a "presumption of prudence" to the allegations of the Complaint.

On October 23, 2013, this Court reversed the district court's dismissal of the Complaint and remanded the matter to the district court for further proceedings consistent with its opinion. *Harris v. Amgen, Inc.*, 738 F.3d 1026 (9th Cir. 2013). With respect to plaintiffs' duty of prudence claim, the Court concluded that the district court had erred in reviewing the allegations of the Complaint under the "presumption of prudence." *Amgen*, 738 F.3d at 1039. This Court also found that the district court erred in holding that restrictions on insider trading under the federal securities laws immunized defendants from liability on plaintiffs' duty of prudence claim. *Id.* at 1041-42. As to that issue, the Court addressed arguments that had been raised by defendants, including whether (1) the elimination of company stock as an investment option would have caused a drop in the share price of that stock (*id.* at 1041); (2) whether plaintiffs' theory of liability would have forced defendants to act on non-public information in violation of the

- 3 -

securities laws (*id.* at 1041-42); and (3) whether acting on non-public information would have done more harm than good to plan participants (*id.* at 1041).[3]

Defendants petitioned for a writ of certiorari. While that petition was pending, the Supreme Court decided *Fifth Third*. In light of that decision, the Supreme Court granted certiorari, vacated the judgment, and remanded to this Court for further consideration.

On reconsideration in light of *Fifth Third*, the panel again reversed the district court's dismissal of the Complaint. *Harris v. Amgen*, No. 10-56014 (9th Cir. Oct. 30, 2014) (the "Opinion") (attached to the Petition).

### III. ARGUMENT

#### A. Standards for En Banc Rehearing

Federal Rule of Appellate Procedure ("FRAP") 35(a) provides that the majority of the circuit court judges on active service may order that an appeal be heard by the court of appeals en banc, although "***an en banc hearing . . . is not favored and ordinarily will not be ordered unless*** (1) *en banc* consideration is

---

[3]  The Court also reversed the district court's dismissal of Count III, holding that the Complaint sufficiently alleged a violation of the duty of candor; Counts IV and V, holding that those counts were derivative of Counts II and III; and Count VI, holding that defendants' sale of company stock to the Plans constituted a "prohibited transaction" under 29 U.S.C. § 1106(a)(1).  The Court also reversed the district court's holding that Amgen was not a fiduciary under ERISA.

necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance."  (Emphasis added.)[4]

En banc review is heavily disfavored.  As the Supreme Court stated in *United States v. American-Foreign S.S. Corp.*, 363 U.S. 685, 689 (1960), "[e]n banc courts are the exception, not the rule," and "[t]hey are convened only when extraordinary circumstances exist."

Moreover, as Judge Reinhardt explained in a concurring opinion in *Newdow v. U.S. Congress*, 328 F.3d 466 (9th Cir. 2003), denying an en banc rehearing, a case should not simply be heard en banc "whenever it involves a question of exceptional importance."  Judge Reinhardt stated:

> The most reasonable construction of the Rule is that this court should rehear a case en banc when it is *both* of exceptional importance *and* the decision *requires correction*. . .  The fact that three-judge panels often decide cases of exceptional importance . . . is an unremarkable, but undeniably important, aspect of our appellate system. . .  To rehear a case en banc *simply* on the basis that it involves an important issue would undermine the three-judge panel system and create an impractical and crushing burden on what otherwise should be, as Rule 35(a) suggests, an exceptional occurrence . . . According to statistics kept by the Clerk of the court, in 2002 this court decided 5,190 cases on the

---

[4]  *See also* 9th Cir. R. 35-1 ("When the opinion of a panel directly conflicts with an existing opinion by another court of appeals and substantially affects a rule of national application in which there is an overriding need for national uniformity, the existence of such conflict is an appropriate ground for petitioning for rehearing en banc.").

> merits, more than 98% of which were finally decided by three-judge panels. These decisions are not measures of "rough justice," later to be refined by the en banc court.

*Id.* at 469-70 (citations and footnotes omitted; emphasis in original).

In *Church of Scientology of California v. Foley*, 640 F.2d 1335, 1337-39 (D.C. Cir. 1981), the court traced the history of the three-judge appellate practice. Noting that "[t]he en banc court is not an institution for monitoring panel decisionmaking," the court stated:

> Because it engages the attention of every active judge, consideration of a case en banc drains judicial resources while burdening the litigants with added expense and delay. And because it often leads to a multiplicity of opinions, a too-frequent corollary of en banc decisionmaking is the inability to offer authoritative guidance, the raison d'etre of the procedure. In this light, it is hardly surprising that Rule 35 explicitly declares that en banc "hearing or rehearing is not favored."

*Id.* at 1341-42 (citations and footnotes omitted). *See also Hart v. Massanari*, 266 F.3d 1155, 1179 (9th Cir. 2001) (en banc review is an "exceedingly time-consuming and inefficient process").[5]

---

[5]   Under FRAP 40, an appellant may seek rehearing by the panel when there is reason to believe that the panel has "overlooked" or "misapprehended" a point of law or fact. Here, defendants do not seek a rehearing under FRAP 40, in the alternative or otherwise, even though the central premise of their Petition is that the panel overlooked and misapprehended certain language in the Supreme Court's decision in *Fifth Third*.

**B.      There Is No Conflict With the Supreme
Court Warranting En Banc Review**

**1.      The Panel Did Not Ignore Any New
"Pleading" Standards Set Forth in *Fifth Third***

Defendants argue that *Fifth Third* created "new liability standards under
ERISA – and hence new pleading requirements – for complaints that allege (as
here) that fiduciaries of a company-retirement plan breached their duties under
ERISA by failing to act on non-public company information," and that the panel
"did not follow *Fifth Third* instructions" in that regard.  Petition at 1.  Similarly,
defendants argue that the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662
(2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "stated only
*general* civil litigation pleading standards" and that the "[t]he panel denied that
*Fifth Third* was articulating a new pleading standard" with respect to ERISA
fiduciary breach claims involving company stock.  Petition at 9 n.2.

In its Opinion, the panel fully addressed and correctly rejected defendants'
arguments.  The panel first quoted the following language of *Fifth Third*, 134 S.
Ct. at 3471:

> We consider more fully one important mechanism for
> weeding out meritless claims, the motion to dismiss for
> failure to state a claim.  That mechanism . . . requires
> careful judicial consideration of whether the complaint
> states a claim that the defendant has acted imprudently.
> *See* Fed. Rule Civ. Proc. 12(b)(6); *Ashcroft v. Iqbal*, 556
> U.S. 662, 677-680 (2009); *Bell Atlantic Corp. V.
> Twombly*, 550 U.S. 5434, 554-563 (2007).  Because the

- 7 -

> content of the duty of prudence turns on "the circumstances . . . prevailing" at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific.

134 S. Ct. at 2471. The panel then stated: "To the extent defendants are arguing that *Fifth Third* requires a higher pleading standard of particularity or plausibility, ***this passage from the Court's opinion makes clear that they are mistaken*.*" Opinion at 28 (emphasis added). *See also Gedek v. Perez*, No. 12-CV-6051L, 2014 U.S. Dist. LEXIS 174338, at *18 (W.D.N.Y. Dec. 17, 2014) (applying *Twombly* and *Iqbal* plausibility standard to ERISA complaint post-*Dudenhoeffer*.)[6]

As for defendants' argument that *Fifth Third* articulated "new standards of liability," the panel correctly stated:

> It is true that the Court articulated certain standards for ERISA liability in *Fifth Third*. But we had already assumed those standards when we wrote our earlier opinion. For example, the Court specified in *Fifth Third* that a fiduciary is not required to perform an act that will do more harm than good to plan participants. We assumed that to be so, and we addressed precisely this point in our earlier opinion. *See Harris v. Amgen*, 738 F.3d at 1041.

---

[6] The only pleading standard that was altered by *Fifth Third* was the Supreme Court's rejection of the "presumption of prudence" that had been adopted by several courts of appeals, including this Court in *Quan v. Computer Sciences Corp.*, 623 F. 3d 870 (9th Cir. 2010). The Supreme Court held that "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings." *Fifth Third*, 234 S. Ct. at 2467.

Opinion at 28.[7]

## 2. The Panel Addressed Each of the Liability Considerations Set Forth in *Fifth Third*

Rather than failing to "follow *Fifth Third*'s instructions" (Petition at 9), or creating "sweeping new rules for fiduciaries that are contrary to the rules that the Supreme Court established" (Petition at 8), the panel specifically addressed each of the considerations that *Fifth Third* said a court should give to an ERISA breach of fiduciary duty claim based on non-public information concerning company stock.

*First*, the panel paid careful attention to the Supreme Court's admonition, as it had in its prior decision, that ERISA "does not require a fiduciary to break the law," such as by selling company stock while in possession of non-public information. 134 S. Ct. at 2472 (citation omitted). The panel specifically stated that "fiduciaries are under no obligation to violate securities laws in order to satisfy their ERISA fiduciary duties (Opinion at 27, citing *Quan*, 623 F.3d at 882 n.8), and then stated as follows:

> Compliance with ERISA would not have required defendants to violate those laws; indeed, compliance with

---

[7] The Supreme Court also stated that where an ERISA duty of prudence claim is based on *public* information, a plaintiff must allege "special circumstances rendering reliance on the market price imprudent." *Fifth Third*, 134 S. Ct. at 2472. The Supreme Court did not define or limit what those "special circumstances" might be. If plaintiffs seek to amend, which would be their prerogative, they would likely include additional allegations that meet this "special circumstances" test.

> ERISA would likely have resulted in compliance with the securities laws. If defendants had revealed material information in a timely fashion to the general public (including plan participants), thereby allowing informed plan participants to decide whether to invest in the Amgen Common Stock Fund, they would have simultaneously satisfied their duties under both the securities laws and ERISA.

Opinion at 27 (citations omitted).[8]

Also regarding the admonition that fiduciaries are not required to break the law, in light of the allegations of the Complaint the panel stated:

> Alternatively, if defendants had made no disclosures but had simply not allowed additional investments in the Fund while the price of Amgen stock was artificially inflated, they would not thereby have violated the prohibition against insider trading, for there is no violation absent purchase or sale of stock.

*Id.*[9]

---

[8]   As explained by the U.S. Government in its *amicus* brief in *Fifth Third*, disclosing information early and thus correcting the inflated stock price **limits** damages, as opposed to "potentially [waiting] months or years later, after even more of the employees' retirement savings have been invested in the overpriced assets."   Brief for the United States as Amicus Curiae Supporting Respondents, *Fifth Third v. Dudenhoeffer*, No. 12-751, at 28 (U.S. March 2014).   Indeed, had defendants made timely disclosure, they would have been free to sell shares of Amgen stock already in the Plans without implicating the restrictions on insider trading.

[9]  The insider trading rules affect only ***actual purchases or sales of securities***.   15 U.S.C. § 78j(b) (prohibiting any manipulative or deceptive device or contrivance "in connection with the purchase or sale of any security").   Thus, if there were no purchases or sales – as would be the case if no new Amgen shares were added to the Plans – there could be no insider trading.   *See **Blue Chip Stamps v. Manor***
(footnote continued . . .)

*Second*, and relatedly, the Supreme Court held that when a complaint alleges that a fiduciary has failed to refrain from making additional purchases, or has failed to disclose inside information to the public, the court "should consider the extent to which an ERISA-based obligation . . . could conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws." 134 S. Ct. at 2473. As discussed directly above, the panel's analysis squarely addressed that possible conflict.

*Third*, the Supreme Court stated that a plaintiff must plausibly allege that a prudent fiduciary in the defendants' position could not have concluded that stopping purchases or publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund. *Id*. at 2473. The panel also paid careful attention to that consideration, stating:

> Based on the allegations in the complaint, it is at least
> plausible that defendants could have removed the Amgen

---

(. . . footnote continued)

*Drug Stores*, 421 U.S. 723, 731-32 (1975) ("actual" purchase or sale required under Section 10(b) or Rule 10b-5); *Kelley v. Rambus, Inc.*, 384 F. App'x 570, 573 (9th Cir. 2010) (Exchange Act claim properly dismissed because plaintiff did not allege actual purchase or sale of shares in reliance on alleged misstatements). *See also United States v. Newman*, No. 13-1837-cr (L), 2014 U.S. App. LEXIS 23190 (2d Cir. Dec. 10, 2014) (clarifying that *personal gain* must be shown to establish liability under the insider trading laws).

Stock Fund from the list of investment options available to the plans without causing undue harm to plan participants. . . Given the relatively small number of Amgen shares that would not have been purchased by the Fund in comparison to the enormous number of actively traded shares, it is extremely unlikely that this decrease in the number of shares that would otherwise have been purchased, considered alone, would have had an appreciable negative impact on the share price. . . It is true that removing the Amgen Common Stock Fund as an investment option would have sent a negative signal to the wider investing public, and that such a signal may well have caused a drop in the share price. But several factors mitigate this effect. The efficient market hypothesis ordinarily applied in stock fraud cases suggests that the ultimate decline in price would have been no more than the amount by which the price was artificially inflated. Further, once the Fund was removed as an investment option, employees would have been prevented from making additional investments in the Fund while the price remained artificially inflated.

Opinion at 25-26.[10]

---

[10] While disclosure of non-public information, or stopping additional purchases, might have caused an initial decline in the value of Amgen stock, whether that drop would have been so great as to outweigh the benefit to the Plans is a matter of **expert proof** and cannot be decided on a motion to dismiss. As the panel stated, while plaintiffs had sufficiently alleged that defendants violated the duty of loyalty they owed as fiduciaries under ERISA, a "determination whether defendants have actually violated their fiduciary duties requires fact-based determinations, such as the likely effect of the alternative actions available to defendants, to be made by the district court on remand, with the assistance of expert opinion as appropriate." Opinion at 34. *See also Morrison v. Money Gram Int'l, Inc.*, 607 F. Supp. 2d 1056 (D. Minn. 2009) (denying, in part, motion to dismiss so that plaintiffs may conduct discovery and prepare "an expert analysis to show how a full and timely disclosure would have affected the Plan.").

Defendants argue that disclosure was only a possible course if each and every fiduciary was a company insider. Petition at 14-15. They then argue that a freeze on future purchases would necessarily constitute "tipping" and thereby violate the securities laws (and would have also given plan participants an "unfair advantage" and thus undermine the objectives of the securities laws). *Id.* at 16-17. However, under defendants' interpretation of the "interplay" between ERISA and the securities laws, *no claim under ERISA based on imprudent investment in company stock would be possible*. That is obviously not what *Fifth Third* intended.

Finally, if the panel believes that its Opinion did not sufficiently track the Supreme Court's language and requires modification, it need not grant en banc review or remand the case to the district court to decide the issues. Rather, the panel can issue a clarifying opinion, as it has previously done in this case. *See Amgen*, 738 F.3d at 1029 (9th Cir. 2013) (withdrawing prior opinion in order to modify certain language). *See also In re Schering Plough Corp ERISA Litig.*, No. 04-2073, 2005 U.S. App. LEXIS 19826, at *1-2 (3d Cir. Sept. 15, 2005) (granting petition for panel rehearing "for the limited purpose" of adding footnote to clarify when presumption of prudence applies); *United States v. Doss*, 630 F.3d 1181, 1183 (9th Cir. 2011) (granting petition for panel rehearing for the limited purpose of amending footnote); *Narayan v. EGL, Inc.*, 616 F.3d 895, 896-97 (9th

Cir. 2010) (granting petition for panel rehearing for the limited purpose of amending the opinion).

### C. This Case Does Not Present A Question Of "Exceptional Importance"

While no doubt of importance to the defendants, this appeal can hardly be said to present "a question of exceptional importance" warranting disruptive en banc review.

Defendants dramatically assert that the panel's decision "is the first by a court of appeals interpreting *Fifth Third* — and thus presumably will be looked to by other courts in similar cases (as well as by fiduciaries nationwide seeking guidance on their obligations). . . ." Petition at 9. However, the fact that it is the first application of *Fifth Third* by a court of appeals does not turn the Opinion into one of "exceptional importance." Indeed, the panel interpreted *Fifth Third* precisely and thoroughly, and whether that interpretation differs in any way from other other courts remains to be seen. Moreover, the Supreme Court made clear that it *expected* the courts to engage in "careful, context-sensitive scrutiny of a complaint's allegations," *Fifth Third*, 134 S. Ct. at 2470, and that its various considerations only "*inform* the analysis," *id.* at 2472, and that courts should "*consider*" whether stopping purchases or publicly disclosing negative information would do more harm than good. *Id.* at 2473 (emphasis added). Thus, the Supreme

Court expected courts to apply the considerations it set forth based on the specific facts of the case.

Finally, defendants do not even seek an en banc rehearing to address the merits of the panel's decision. Rather, they ask the full Court to address the panel's decision denying their request "to remand to the district court to allow plaintiffs an opportunity to amend the complaint in order to meet *Fifth Third*'s new pleading requirement." Petition at 7. However, the panel's decision to conduct a *de novo* analysis of the pleading rather than remand for further rounds of pleading and motion practice is not "necessary to secure or maintain the uniformity of the courts," and does not "involve a question of exceptional importance." Defendants clearly believe that five years of motion practice is not enough to satisfy their lust for delay and they prefer to add another year or two to this process. The time has long come for the parties to reach the merits of the case.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs respectfully submit that en banc review is not warranted here.

Dated: December 29, 2014          WOLF HALDENSTEIN ADLER
                                           FREEMAN & HERZ LLP
                                   Francis M. Gregorek
                                   Betsy C. Manifold
                                   Rachele R. Rickert

                                   <u>/s/    Betsy C. Manifold</u>
                                       BETSY C. MANIFOLD

750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com

- and -

Mark C. Rifkin
Michael Jaffe
270 Madison Ave.
New York, NY  10016
Telephone:  212/545-4600
Facsimile:   212/545-4653
rifkin@whafh.com
jaffe@whafh.com
lukic@whafh.com

GAINEY McKENNA & EGLESTON
Thomas J. McKenna
440 Park Avenue South
New York, NY 10016
Telephone:  212/983-1300
Facsimile:   212/983-0383
tjmckenna@gme-law.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this response to the Petition complies with the type-volume limitation of Circuit Rule 40-1(a) in that, according to the word-count function of the word-processing program in which it was written (Microsoft Word), the response contains 3,877 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/     *Betsy C. Manifold*

## CERTIFICATE OF SERVICE

I certify that on this 29th day of December, 2014, I electronically filed the foregoing with the Clerk using the appellate CM/ECF system. Counsel for all parties to the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/     *Betsy C. Manifold*

AMGEN:21463

770507